[No. 38182-6-II.   Division Two.   December 29, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS MICHAEL
SMITH, *Appellant*.

*Anne M. Cruser* (of *Law Office of Anne Cruser*), for appellant.

*Edward G. Holm, Prosecuting Attorney*, and *Carol L. La Verne, Deputy*, for respondent.

¶1  HOUGHTON, J. — Thomas Smith appeals his conviction for first degree animal cruelty following the death of his llama. He claims he received ineffective assistance of counsel when his attorney failed to (1) discover information before trial that may have explained the llama's death and (2) seek a lesser included instruction on second degree animal cruelty. We reverse and remand.

## FACTS

¶2 This case involves the death of Hola, a llama.[1] In 2003, Hooved Animal Rescue of Thurston County (HARTC) impounded several llamas, including Hola, who were sick and malnourished. HARTC placed Hola at Smith's home and Hola's health improved. Hola even attended the Southwest Washington Fair and the Chehalis Youth Fair with Smith in 2005.

¶3 Smith and his family moved from a 14-acre farm to a new home on 1.18 acres in spring 2007. Smith took Hola and several other llamas to live at Fire Mountain Farm, which Robert Zandecki managed. Around this time, both Smith and Zandecki became concerned about Hola's weight. Attempts to help Hola gain weight at the farm did not help. Hola also began exhibiting unusual behaviors, such as allowing other llamas to dominate him at feeding time. In early November 2007, Smith returned Hola to his home to give him greater attention.

¶4 Smith took steps to address Hola's weight loss. He fed Hola two bales of hay each day and a bucket of cob and molasses with trace minerals. He also fed Hola a fattening agent made of beet pulp. He administered ivermectin, a parasite dewormer. He testified that Hola experienced "spikes" of improvement during this time. Verbatim Report of Proceedings (VRP) at 364. Smith did not seek veterinary assistance.

¶5 On December 7, Gail Crow, Smith's neighbor, saw Hola on the ground and thought he was dead. Unable to reach Smith, she contacted the Thurston County Sheriff's Department. Deputy Reuben Mancillas responded. Mancillas

---

[1] A llama is "any of several wild and domesticated So. American ruminants related to the camel but smaller and without a hump. . . [. T]he domesticated variety of the [llama] guanaco is about three feet high at the shoulder with a coat of long coarse woolly hair varying in color from black to white and that has been used for centuries in the Andes as a beast of burden and a source of wool." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1325 (2002).

first observed Hola from Crow's property and could not determine if he was dead or alive. Mancillas attempted but was unable to contact anyone at Smith's home. Mancillas then secured a search warrant to attend to Hola, to photograph the property, and to see if there was sufficient food and water. Once on the premises, Mancillas observed Hola to be in great pain and very thin.

¶6 Mancillas decided to seize the llamas on the property and contacted HARTC for assistance.[2] Gary Kaufman from HARTC responded. Kaufman first thought Hola was dead, but he then found him to be in a "downer" position and his head to be in a "death arch." VRP at 173. He examined Hola and found almost no flesh on him. Kaufman and a deputy led Hola to a trailer because Hola was having trouble walking on his own. Kaufman's opinion at the time was that Hola was starving, had lice, and was malnourished. He took Hola to see Dr. Randal Thomas, a veterinarian. Thomas performed an initial examination and administered a series of supplements. Kaufman then took Hola home to care for him.[3] Between December 7, 2007, and January 20, 2008, Hola had good and bad days and he gained weight.

¶7 On the morning of January 20, Kaufman found Hola in a down position. Hola had trouble breathing, a high temperature, and a fast heartbeat. Kaufman called Dr. Perkins, another veterinarian, and Connie Patterson, a cofounder of HARTC. They both came to Kaufman's home to discuss the situation. They collectively decided that it was time to euthanize Hola, which Perkins did that day. Perkins performed a necropsy that Kaufman observed. The necropsy revealed a previously undetected parasite.

¶8 The State charged Smith with felony first degree animal cruelty. RCW 16.52.205(2). During the jury trial, the State and Smith called several witnesses to testify, includ-

---

[2] Police found another llama named Bolivian Legend Kay (Legend) on the property. The treatment of Legend is not at issue in this case, but the police seized Legend along with Hola.

[3] Kaufman also took Legend to his home.

ing Kaufman, Crow, Thomas, feed store employees, and Smith himself. Perkins, the veterinarian who performed the necropsy, did not testify due to an emergency. Thomas testified that Hola had parasites and that a lack of nutrition or a parasite caused Hola's condition. He also testified that parasites could cause weight loss even when the llama consumes food.

¶9 Before the case went to the jury, defense counsel did not seek a lesser included instruction on second degree animal cruelty, a gross misdemeanor. RCW 16.52.207(2). On the jury's first day of deliberation, it asked, "Does failure to take some type of action other than withholding food and water constitute starving the animal? IE: Not seeking assistance in treating the animal." Clerk's Papers (CP) at 7. The trial court directed the jury to reread the instructions. The jury found Smith guilty as charged.

¶10 After trial, defense counsel talked with two experts about the possibility of Johne's Disease as the cause of Hola's death. Mark Kinsel, the Washington State Department of Agriculture's Johne's Disease Coordinator, sent an e-mail to defense counsel summarizing Johne's Disease as an intestinal illness characterized by a chronic wasting condition. A Washington State University lab tested tissue samples from Hola's necropsy, but it did not detect Johne's Disease. The tissue samples were not properly collected, however, for such an evaluation, and Perkins had destroyed the remaining tissues after the necropsy. Dr. William Davis, a Washington State University professor, wrote a letter to defense counsel explaining, among other things, that Johne's Disease is difficult to diagnose and that one of the "hallmarks" of the disease is progressive weight loss. CP at 39. Defense counsel initially sought extra time to file a motion for a new trial under CrR 7.5 but ultimately did not pursue the motion. Smith appeals.

## ANALYSIS

### Ineffective Assistance of Counsel

¶11 Smith contends that he received ineffective assistance on two bases. First, he argues that defense counsel failed to discover, before trial, that Hola might have had Johne's Disease. Second, he argues that defense counsel should have requested a lesser included offense instruction. Because our resolution of the latter claim is dispositive, we address it first.

¶12 The federal and state constitutions guarantee effective assistance of counsel. U.S. Const. amend. VI; Wash. Const. art. I, § 22. An appellant claiming ineffective assistance of counsel must show deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We start with a strong presumption of counsel's effectiveness. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Additionally, legitimate trial tactics fall outside the bounds of an ineffective assistance of counsel claim. *State v. Hendrickson*, 129 Wn.2d 61, 77, 917 P.2d 563 (1996).

¶13 Smith contends that he received ineffective assistance of counsel because defense counsel failed to request lesser included offense instructions for second degree animal cruelty. The right to present a lesser included offense instruction to the jury is statutory. RCW 10.61.006; RCW 10.61.010; *State v. Bowerman*, 115 Wn.2d 794, 805, 802 P.2d 116 (1990). A defendant is entitled to a lesser included offense instruction if (1) each of the elements of the lesser offense is a necessary element of the offense charged (legal prong) and (2) the evidence in the case supports an inference that only the lesser crime was committed (factual prong). *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d

382 (1978). The State does not dispute that second degree animal cruelty meets the legal prong of the *Workman* test.[4]

■ ■ ¶14 The factual prong of *Workman* is satisfied when, viewing the evidence in the light most favorable to the party requesting the instruction, substantial evidence supports a rational inference that the defendant committed only the lesser included or inferior degree offense to the exclusion of the greater one. *State v. Fernandez-Medina*, 141 Wn.2d 448, 461, 6 P.3d 1150 (2000). Several pieces of evidence support a rational inference that Smith committed only second degree animal cruelty for his failure to seek appropriate medical attention: (1) Thomas's testimony that a previously undiscovered parasite might have been the cause of Hola's health problems; (2) Smith's testimony that he fed Hola beet pulp and other food to help him gain weight; (3) feed store employees' testimony that Smith sought advice from them on how to help Hola gain weight; and (4) Smith's acknowledgment that he did not take Hola to a veterinarian to seek medical attention.

¶15 In sum, defense counsel's all or nothing strategy was not a legitimate trial tactic and constituted deficient performance because he presented evidence to call into question the State's theory on starvation, not the entire crime. This left the jury in an arduous position: to either convict Smith of first degree animal cruelty or to let him go free despite evidence of some culpable behavior. *See State v. Pittman*, 134 Wn. App. 376, 387-89, 166 P.3d 720 (2006) (failure to request lesser included offense instruction was

---

[4] RCW 16.52.205(2) provides, "A person is guilty of animal cruelty in the first degree when, except as authorized by law, he or she, with criminal negligence, starves, dehydrates, or suffocates an animal and as a result causes: (a) Substantial and unjustifiable physical pain that extends for a period sufficient to cause considerable suffering; or (b) death."

RCW 16.52.207(2) provides in pertinent part:

An owner of an animal is guilty of animal cruelty in the second degree if, under circumstances not amounting to first degree animal cruelty, the owner knowingly, recklessly, or with criminal negligence:

(a) Fails to provide the animal with necessary shelter, rest, sanitation, space, or medical attention and the animal suffers unnecessary or unjustifiable physical pain as a result of the failure.

ineffective assistance because defendant committed a crime similar to the one charged but the jury had no option other than to convict or acquit). Smith establishes both prongs of his ineffective assistance of counsel claim on the instructional issue.[5]

¶16 Reversed and remanded.

VAN DEREN, C.J., and QUINN-BRINTNALL, J., concur.

---

[5] Because we reverse and remand on one of Smith's ineffective assistance of counsel claims, we do not address his argument that his counsel failed to discover evidence before trial.