230 P.3d 614 (2010)
STATE of Washington, Respondent,
v.
Robert Charles BREITUNG, Appellant.
No. 38869-3-II.
Court of Appeals of Washington, Division 2.
April 20, 2010.
*616 Jennifer J. Sweigert, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Thomas Charles Roberts, Attorney at Law, Tacoma, WA, for Respondent.
VAN DEREN, C.J.
¶ 1 Robert Charles Breitung appeals his conviction on two counts of second degree assault (counts I and II) and one count of second degree unlawful possession of a firearm (count III). At issue is whether defense counsel was ineffective for failing to propose instructions on fourth degree assault. Also at issue is whether the predicate offense court's failure to comply with former RCW 9.41.047(1) (2005)'s mandateto inform Breitung that he was prohibited from possessing firearmswarrants reversal of his present conviction for unlawful possession of a firearm. We hold that the failure to propose a lesser included instruction on fourth degree assault under the circumstances of this case amounted to ineffective assistance that prejudiced Breitung, requiring reversal of his second degree assault convictions (counts I and II). We also hold that the predicate offense court's failure to provide statutorily required notice to Breitung that he had lost his right to possess firearms warrants vacation of his conviction for second degree unlawful possession of a firearm (count III) and dismissal of the charge with prejudice. We remand for further proceedings on the assault charges.

FACTS
¶ 2 On July 19, 2007, Ossie Cook and Richard Stevenson test drove a truck they had modified for a client of the automobile mechanic shop where they both worked. While they were test driving the truck, Cook and Stevenson stopped at a local smoke shop in unincorporated Pierce County to purchase cigarettes. There, Cook saw a thin blonde woman enter a black sports car and leave.
¶ 3 As they were leaving the store, the men decided to turn onto Pipeline Road to complete the test drive. Pipeline Road is a mostly gravel road, which they used to test drive the vehicle's four-wheel drive suspension and brakes. Cook and Stevenson drove to the end of Pipeline Road where they performed skid stops, drove around barricades, and generally tested the truck's performance, making sure its equipment was working properly. Cook exited the truck and watched while Stevenson performed skid tests to see if the brakes functioned correctly. The men spent from 10 to 20 minutes testing the vehicle.
¶ 4 As they were leaving Pipeline Road, Breitung walked out into the middle of the road ahead of the truck. According to Cook and Stevenson, as they approached Breitung, he pulled a gun from behind his back. *617 Breitung then went to the driver's side of the vehicle and pointed the gun at the driver's window. Cook later described the gun as a dark gray or silver gun with spiraled channeling in the barrel. He also said he believed the gun to be an automatic large caliber gun, ".44 or bigger." Report of Proceedings (RP) at 303. Stevenson later described the gun to a sheriff's deputy and at trial as having a silver or gray slide with squared edges and a black body and resembled his handgun, a .40 caliber Smith & Wesson.
¶ 5 As he pointed the gun at Cook and Stevenson, Breitung told the men to stop following his girlfriend and said, "[G]et the f[***] out of here or I'll kill you." RP at 351. Cook then noticed the black car he had seen at the smoke shop parked nearby. After Breitung's threat, Stevenson and Cook drove a few blocks away and called the police, giving a detailed description of the gun that Breitung had pointed at them.
¶ 6 Pierce County Sheriff's Deputies Jeff Papen and Jake Greger were dispatched to the scene to investigate the complaint. Upon their arrival, the deputies noticed the black car and spoke to Breitung's girlfriend, who asked if they were there to talk to her about the guys who had been following her.
¶ 7 Breitung then approached the deputies. He admitted to the deputies and at trial that he had a confrontation with two people in a vehicle, but he claimed that he had pulled out and pointed a microscope lens[1] at the vehicle, not a gun. Breitung claimed that he pulled the microscope top from his pocket and pointed it at the vehicle so that the men would stop. He asserted that once the men came to a stop, he placed the microscope top back in his pocket, approached the vehicle, and said, "`What's the problem, guys? You're scaring my girlfriend. Why did you follow her home?'" RP at 424. When the men did not respond, Breitung testified that he continued, saying "`Why don't you guys split before there's a bigger problem, just go.'" 5 RP at 424. Breitung denied pointing a gun at Cook or Stevenson and denied threatening to kill them.
¶ 8 After telling his side of the story, Breitung went to the trailer and retrieved the microscope lens to show the deputies. The deputies asked Breitung whether he owned a gun and he admitted that he had a rifle and some handguns, including a handgun with a black body with a silver slide. As the deputies talked with Breitung, his girlfriend went into the trailer and retrieved a Taurus .45 caliber semiautomatic handgun, which matched the description that Cook and Stevenson had reported.
¶ 9 The State charged Breitung with two counts of second degree assault (counts I and II) and one count of second degree unlawful possession of a firearm (count III).[2] Cook, Stevenson, Deputies Papen and Greger, and Breitung testified to events we described above.
¶ 10 During trial, the State proposed jury instructions that detailed the elements and definitions of the charges of second degree assault and second degree unlawful possession of a firearm. Defense counsel proposed no additional instructions. The trial court adopted the majority of the State's proposed instructions and incorporated some additional instructions regarding the second degree unlawful possession of a firearm charge.
¶ 11 The jury returned guilty verdicts on counts I, II, and III. The jury did not complete the special verdict forms that accompanied counts I and II, which asked if Breitung was armed with a firearm at the time of the assaults. Breitung appeals.

ANALYSIS

I. Ineffective Assistance of CounselFailure to Request Lesser Included Instruction
¶ 12 Breitung first argues that his trial counsel was ineffective for failing to offer an instruction on fourth degree assault. We agree.
*618 ¶ 13 To prevail on an ineffective assistance of counsel claim, Breitung must show that (1) defense counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987). Breitung must make both showings to prevail on his ineffective assistance claim. Thomas, 109 Wash.2d at 226, 743 P.2d 816. For the first prong, our scrutiny of counsel's performance is highly deferential and we employ a strong presumption of reasonableness. Thomas, 109 Wash.2d at 226, 743 P.2d 816. If defense counsel's conduct can be fairly characterized as legitimate trial strategy or tactics, it does not constitute deficient performance. State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996). Accordingly, defendant must show in the record the absence of legitimate strategic or tactical reasons supporting defense counsel's challenged conduct. In re Pers. Restraint of Hutchinson, 147 Wash.2d 197, 206, 53 P.3d 17 (2002). The second prong requires Breitung to show that there is a reasonable probability that the trial outcome would have differed absent counsel's deficient performance. Hendrickson, 129 Wash.2d at 78, 917 P.2d 563.
¶ 14 An instruction on an inferior degree offense is warranted where
"(1) the statutes for both the charged offense and the proposed inferior degree offense proscribe but one offense; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense."
State v. Fernandez-Medina, 141 Wash.2d 448, 454, 6 P.3d 1150 (2000) (internal quotation marks omitted) (quoting State v. Peterson, 133 Wash.2d 885, 891, 948 P.2d 381 (1997)). Fourth degree assault requires proof that "under circumstances not amounting to first, second, or third degree, or custodial assault, [the defendant] assaults another." RCW 9A.36.041(1). An instruction on fourth degree assault is proper when the evidence supports "an inference that the assault was committed only with a nondeadly weapon." State v. Winings, 126 Wash.App. 75, 87, 107 P.3d 141 (2005).
¶ 15 Breitung testified that, as he stood in the road with the truck coming toward him, he pulled the microscope lens out of his pocket and pointed it at the truck, told the occupants to stop, and the vehicle stopped. He then placed the microscope lens in his pocket and approached the driver's window where he talked with the truck's occupants. He testified that he did not point anything at the truck's occupants while standing at the driver's window, but he admitted he had pointed the lens at the truck "to stop the vehicle." RP at 425. The jury was instructed that "[a]n assault is an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury." Clerk's Papers at 24. Cook and Stevenson testified that they feared they were going to be shot. Breitung's testimony, if the jury believed it, established that an assault (of some sort) occurred.
¶ 16 The State does not argue that the evidence does not warrant an instruction on fourth degree assault; instead, it argues that defense counsel's decision to forgo the instruction was a legitimate trial strategy an all or nothing defense. "The decision to not request an instruction on a lesser included offense is not ineffective assistance of counsel if it can be characterized as part of a legitimate trial strategy to obtain an acquittal." State v. Hassan, 151 Wash.App. 209, 218, 211 P.3d 441 (2009); see also State v. Hoffman, 116 Wash.2d 51, 112, 804 P.2d 577 (1991) (having chosen an all or nothing defense at trial, defendants cannot on appeal change their course and complain that their gamble did not pay off; "defendants cannot have it both ways"). But defense counsel can be ineffective where his tactical decision to pursue an all or nothing approach, by not requesting a lesser included instruction, is objectively unreasonable. Hassan, 151 Wash.App. at 218-19, 211 P.3d 441.
*619 ¶ 17 We consider three factors "to gauge whether a tactical decision not to request a lesser included offense instruction is sound or legitimate: (1) The difference in maximum penalties between the greater and lesser offenses; (2) whether the defense's theory of the case is the same for both the greater and lesser offenses; and (3) the overall risk to the defendant, given the totality of the developments at trial." State v. Grier, 150 Wash.App. 619, 640-41, 208 P.3d 1221 (2009), review granted, 167 Wash.2d 1017, 224 P.3d 773 (2010); see also State v. Pittman, 134 Wash.App. 376, 387-88, 166 P.3d 720 (2006); State v. Ward, 125 Wash.App. 243, 249-51, 104 P.3d 670 (2004).
¶ 18 Based on Breitung's offender score of three, second degree assault carries a standard sentencing range of 13 to 17 months.[3] Fourth degree assault is a gross misdemeanor, RCW 9A.36.041(2), and thus carries a maximum term of 12 months. RCW 9.92.020 (gross misdemeanor carries maximum term of one year). Comparing the maximum sentences available yields a disparity of five months. Although five months is not a large disparity in absolute terms, it is almost half again as much as the maximum for fourth degree assault (41.6 percent more). Moreover, a second degree assault conviction carries other detriments as well. Second degree assault is both a felony and a "most serious offense," and counts as a strike under the persistent offender accountability act; whereas fourth degree assault is only a gross misdemeanor. See former RCW 9.94A.030(29)(b), (33) (2006) (persistent offender); RCW 9.94A.570.
¶ 19 As to the defense theory, defense counsel argued to the jury during closing argument that the State generally had failed to meet its burden to prove the elements of the charged offenses beyond a reasonable doubt. Defense counsel characterized the case as a credibility battle between the parties' witnesses as to whether Breitung approached his alleged victims with a gun. But defense counsel additionally argued that Breitung did not threaten the men and only approached them and told them to move on. In other words, defense counsel appears to have argued that Breitung made no threat and, thus, there was no assault whatsoever. Such theory does not comport with Breitung's testimony admitting a fourth degree assault.
¶ 20 On the one hand, the defense theory that no assault occurred would be undermined if the defense asked for an instruction on fourth degree assault. Generally, "[w]here a lesser included offense instruction would weaken the defendant's claim of innocence, the failure to request a lesser included offense instruction is a reasonable strategy." Hassan, 151 Wash.App. at 220, 211 P.3d 441. On the other hand determining "whether an all or nothing strategy is objectively unreasonable is a highly fact specific inquiry." Hassan, 151 Wash.App. at 219, 211 P.3d 441. Here, defense counsel's strategy of arguing that no threat (and thus no assault) occurred simply did not comport with Breitung's trial testimony admitting to fourth degree assault and, on that basis, the defense strategy could be considered unreasonable.
¶ 21 Similarly, the defense strategy exposed Breitung to substantial risk given developments at trial. In theory, the all or nothing defense tactic is effective when one of the elements of a crime is highly disputed and the State has failed to establish every element beyond a reasonable doubt; in that situation, the jury must acquit the defendant based on a reasonable doubt about proof of that element. See Grier, 150 Wash.App. at 642, 208 P.3d 1221 (so explaining). But where there is overwhelming evidence that the defendant is guilty of some offense, such strategy may be unreasonably risky. Grier, 150 Wash.App. at 643, 208 P.3d 1221. *620 "`Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.'" Grier, 150 Wash.App. at 643, 208 P.3d 1221 (quoting Keeble v. U.S., 412 U.S. 205, 212-13, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973)). In Grier, we held that, given the evidence at issue, defense counsel's failure to request lesser included offense instructions left the jury highly likely to resolve its doubts in favor of convicting the defendant, which in fact it did. 150 Wash.App. at 643, 208 P.3d 1221. The same appears to be true here.
¶ 22 As noted, defense counsel argued that the State had failed to prove beyond a reasonable doubt that Breitung approached the men while holding a gun and he additionally argued that Breitung never threatened them; therefore, he did not assault them. But Breitung's testimony admitted to conduct that, under the instructions, amounted to some kind of assault. Thus, defense counsel's strategy of asking the jury to acquit Breitung on the assault charges was not reasonable in light of his admission that some assault had occurred. In this circumstance, faced with such admission, the jury was likely to resolve its doubts in favor of convicting Breitung of the only assault offense before itsecond degree assaultand did so. Grier, 150 Wash.App. at 643, 208 P.3d 1221. Here, similar to the circumstance in Grier, Breitung was entitled to an instruction on the lesser included offense of fourth degree assault and, because the failure to request the instructions was not a legitimate strategy under the circumstances, Breitung meets the first prong of the ineffective assistance of counsel test, deficient performance. See 150 Wash.App. at 644, 208 P.3d 1221.
¶ 23 To show ineffective assistance, Breitung "must also demonstrate a reasonable probability that, but for defense counsel's deficient performance, the trial results would have differed." Grier, 150 Wash.App. at 644, 208 P.3d 1221. Like the Grier case, defense counsel's failure to request lesser included instructions prejudiced Breitung. As the Grier court explained, the lack of a warranted lesser included instruction "puts in an untenable position a jury that is convinced beyond a reasonable doubt that [the defendant] has committed a crime"; that is, "the jury wants to hold the defendant culpable and to convict h[im] of some crime, but is given only one option, here, second degree [assault]." 150 Wash.App. at 645, 208 P.3d 1221. Similar to Grier, the jury's "untenable position" was demonstrated in its anomalous verdicts. 150 Wash.App. at 645, 208 P.3d 1221. The jury found Breitung guilty of second degree assault, which required use of a deadly weapon, but the jury left blank the special verdict forms asking whether Breitung was armed with a firearm during the commission of the assaults.
¶ 24 The evidence at trial indicated that Breitung pointed either a gun or a microscope lens at the men in the truck. The jury's seemingly contradictory verdicts suggest that the jury believed Breitung should be held accountable for some assault but, possibly, could not decide on whether a gun was used. Grier, 150 Wash.App. at 645, 208 P.3d 1221. Defense counsel's all or nothing strategy provided no fourth degree assault option for the jury's consideration. Under these circumstances, there is a reasonable probability that Breitung's trial would have turned out differently had counsel requested and, had the trial court given, lesser included instructions on fourth degree assault. Thus, Breitung meets the second prong of the ineffective assistance of counsel test. Grier, 150 Wash.App. at 645, 208 P.3d 1221. The appropriate remedy is reversal and remand for a new trial on the assault counts.[4]Grier, 150 Wash.App. at 646, 208 P.3d 1221; see also State v. Smith, 154 Wash.App. 272, 223 P.3d 1262, 1264-65 (2009) (ineffective assistance warranted reversal where counsel failed to seek lesser included instruction on second degree animal cruelty).

*621 II. Predicate Offense Court's Failure To Inform Breitung of Statutorily Required Notice of Loss of Right To Bear Arms
¶ 25 Breitung next contends that the trial court erred in denying his motion to dismiss count III based on the court's failure to provide statutorily required notice of the loss of his right to bear arms. As a threshold matter, the State argues that we should decline to address this issue because Breitung failed to assign error to the trial court's order denying his motion.
¶ 26 RAP 10.3(g) provides that appellate courts will only review a claimed error that is included in an assignment of error or clearly disclosed in the associated issue pertaining to such assignment. See State v. Goodman, 150 Wash.2d 774, 782, 83 P.3d 410 (2004); see also Goehle v. Fred Hutchinson Cancer Research Ctr., 100 Wash.App. 609, 620, 1 P.3d 579 (2000) (appellate court declined to address appellant's argument in her brief that she was prejudiced by the trial court's action because appellant failed to assign error to her claim that the trial court abused its discretion in limiting her cross-examination of a witness). But we may decline to refuse review under RAP 10.3(g) where the briefing and argument are clear and the record is adequate. Goehle, 100 Wash.App. at 613-14, 1 P.3d 579; State v. Olson, 74 Wash.App. 126, 128-29, 872 P.2d 64 (1994), aff'd, 126 Wash.2d 315, 893 P.2d 629 (1995). See also State v. Slanaker, 58 Wash. App. 161, 166, 791 P.2d 575 (1990) (appellant's failure to properly assign error may be excused when the nature of the challenge is perfectly clear). Here, Breitung briefed the matter sufficiently for the State to respond and we exercise our discretion to reach the merits.
¶ 27 Former RCW 9.41.047(1) provides in relevant part that at the time a person is convicted of an offense making the person ineligible to possess a firearm, the convicting court shall notify the person, orally and in writing, that the person may not possess a firearm unless a court of record restores his or her right to do so.[5] Here, Breitung was previously convicted in municipal court of assaultdomestic violence in 1997. The municipal court's order imposing Breitung's sentence does not mention the notice that former RCW 9.41.047(1) required.[6]
¶ 28 Addressing former RCW 9.41.047(1), our Supreme Court has articulated the relevant inquiry as whether the defendant has been "affirmatively misled" to believe that firearm possession was lawful. State v. Minor, 162 Wash.2d 796, 800-01, 174 P.3d 1162 (2008). "Ignorance of the law is generally not a defense, and Washington case law provides that knowledge of the illegality of firearm possession is not an element of the crime. However, the lower courts have carved a narrow exception for where a governmental entity has provided affirmative, misleading information." Minor, 162 Wash.2d at 802, 174 P.3d 1162; see also State v. Moore, 121 Wash.App. 889, 895, 91 P.3d 136 (2004); State v. Leavitt, 107 Wash.App. 361, 371 n. 13, 27 P.3d 622 (2001).
¶ 29 The issue in Minor was whether the predicate offense court's failure to check a *622 box, which was located on a preprinted juvenile adjudication form beside the paragraph containing notice of the firearm prohibition, affirmatively misled the defendant into believing that he could possess firearms. 162 Wash.2d at 797-98, 800-01, 174 P.3d 1162. Citing with approval State v. Carter, 127 Wash.App. 713, 112 P.3d 561 (2005), the Minor court noted that Division Three had rejected the defendant's due process claim because he had not been affirmatively misled where there was no notification provision in the order on which the unlawful firearms possession charge was based. Minor, 162 Wash.2d at 803, 174 P.3d 1162; see also Carter, 127 Wash.App. at 720-21, 112 P.3d 561 ("while the predicate offense court apparently failed to inform Mr. Carter according to the statute, he was not affirmatively misled").
¶ 30 The Minor court explained:
Though the State argues that [the defendant] has provided no evidence of being misled by the predicate offense court, by failing to check the appropriate paragraph in the order, the predicate offense court not only failed to give written notice as required by former RCW 9.41.047(1) but, also, we conclude, affirmatively represented to [the defendant] that those paragraphs did not apply to him. Had the order omitted any language regarding the firearms prohibition, as in Carter, the State's argument would be more persuasive.

162 Wash.2d at 803, 174 P.3d 1162 (emphasis added). The Minor court held that by not checking the firearm prohibition box on the order, the predicate offense court both violated former RCW 9.41.047(1) when it failed to notify the defendant he was prohibited from possessing firearms and "affirmatively represented to him the firearm prohibition did not apply to him." 162 Wash.2d at 804, 174 P.3d 1162. Because the court had both failed to inform and affirmatively misled the defendant, reversal of his conviction for unlawful possession of a firearm was warranted. Minor, 162 Wash.2d at 804, 174 P.3d 1162.
¶ 31 In contrast, the order here does not mention the firearm prohibition.[7] While it fails to inform Breitung of the prohibition, it does not affirmatively mislead him. Accordingly, this case squarely presents the issue left open by Minor"whether failure to comply with former RCW 9.41.047(1) alone warrants reversal."[8] 162 Wash.2d at 804 n. 7, 174 P.3d 1162.
¶ 32 Our Supreme Court has explained that the notice requirement of former RCW 9.41.047(1) was the legislature's attempt to balance a citizen's right to possess guns against a perceived need to curb violence. "[I]n enacting this statute, the legislature balanced the concern with escalating violence, which some commentators blamed on the `ready availability of firearms,' with the concern that restricting firearm availability will infringe upon the right of a law-abiding citizen to keep and bear arms." Minor, 162 Wash.2d at 803, 174 P.3d 1162 (quoting Final B. Rep. on Engrossed Second Substitute H.B. at 2, 53rd Leg. Reg. Sess. (Wash.1994)). Despite such balancing, the Minor court made clear that "[former] RCW 9.41.047(1) requires the convicting court to provide oral and written notice. The statute is unequivocal in its mandate." 162 Wash.2d at 803, 174 P.3d 1162 (emphasis added). Minor explained that despite the statute's failure to articulate a remedy for noncompliance with its directives, "[t]he presence of a notice requirement shows the legislature regarded such notice of deprivation of firearms rights as substantial. Relief consistent with the purpose of the statutory requirement must be available where the statute has been violated." Minor, 162 Wash.2d at 803-04, 174 P.3d 1162 (emphasis added). Consistent with Minor, we hold that Breitung was entitled to the notice that former RCW *623 9.41.047(1) required and, in its absence, he is entitled to an appropriate remedy.
¶ 33 Minor reiterated our holding in Leavitt, that "a conviction for unlawful possession of a firearm is invalid where defendant can demonstrate actual prejudice resulting from a sentencing court's failure to comply with former RCW 9.41.047(1)." Minor, 162 Wash.2d at 802, 174 P.3d 1162; see also Leavitt, 107 Wash.App. at 373, 27 P.3d 622.[9] In Leavitt, we held that the predicate offense court's noncompliance with RCW 9.41.047 clearly and substantially prejudiced Leavitt as demonstrated in part by his "guileless actions" of volunteering more information to police than was asked of him and which led to his unlawful possession of firearms convictions. 107 Wash.App. at 367-68, 27 P.3d 622. Similarly Breitung's responses were candid and more than was required by the officers' questions. He volunteered information about his various guns, their descriptions, and twice offered to retrieve his guns from his residence, which the officers declined. As in Leavitt, the fact of Breitung's gun possession and his candid, unsuspecting comments about his guns to police are direct consequences of the predicate offense court's failure to comply with former RCW 9.41.047(1)'s notice requirements and his concomitant unlawful possession of a firearm conviction demonstrates the prejudice resulting from the predicate offense court's omission.
¶ 34 We acknowledge that every published opinion that has addressed RCW 9.41.047(1) has observed (or relied on another case that has observed) that knowledge of the illegality of firearm possession is not an element of the crime.[10] That observation holds true here as well. Breitung was charged with second degree unlawful possession of a firearm in violation of former RCW 9.41.040 (2005), which contains no such mens rea. See former RCW 9.41.040(2)(a)(i). It is equally the case, however, that by enacting RCW 9.41.047(1), the legislature is requiring trial courts to impart such knowledge of illegality to defendants. For what would be the purpose of a mandatory provision that the convicting court give both oral and written notice of the firearm prohibition to the defendant, if not to impart to him knowledge of the illegality?[11]
¶ 35 Here, the predicate offense court's violation of RCW 9.41.047(1)'s mandate is clear. The question is what remedy is appropriate. The legislature's failure to specify a remedy permits sentencing courts (and the State) to ignore the statute's mandatory directives with impunity. Were we to turn a blind eye to the predicate offense *624 court's failure to give RCW 9.41.047(1)'s mandatory notice, such result would render the entire statute meaningless. This we cannot do: "An appellate court `may not interpret any part of a statute as meaningless or superfluous.'" State v. Allen, 150 Wash.App. 300, 322, 207 P.3d 483 (2009) (quoting State v. Lilyblad, 163 Wash.2d 1, 11, 177 P.3d 686 (2008)). In accord with Minor's directive that "[r]elief consistent with the purpose of the statutory requirement must be available where the statute has been violated," we hold that where a convicting court has failed to give the mandatory notice directed in RCW 9.41.047(1) and there is no evidence that the defendant has otherwise acquired actual knowledge of the firearm possession prohibition that RCW 9.41.047(1) is designed to impart, the defendant's subsequent conviction for unlawful possession of a firearm is invalid and must be reversed. 162 Wash.2d at 803-04, 174 P.3d 1162 (emphasis added).
¶ 36 We reverse Breitung's second degree assault convictions (counts I and II) and his conviction for second degree unlawful possession of a firearm (count III). We vacate and dismiss count III with prejudice. See Minor, 162 Wash.2d at 804, 174 P.3d 1162. We remand for a new trial on the assault charges.
I concur: HOUGHTON, J.
PENOYAR, J. (Dissent).
¶ 37 As the majority points out, the Tacoma Municipal Court order here does not mention the firearm prohibition. While the order fails to inform Robert Charles Breitung of the prohibition, it does not affirmatively mislead him, and thus, reversal of his conviction for unlawful possession of a firearm is not warranted. State v. Minor, 162 Wash.2d 796, 803, 174 P.3d 1162 (2008); State v. Carter, 127 Wash.App. 713, 720-21, 112 P.3d 561 (2005).
¶ 38 I understand the justice of the majority's decision but fail to see the precedent for it. If the legislature wishes to restrict convictions to those who have been warned, it may do so. Lacking that, the usual rule prevails and Breitung's ignorance of the law is no excuse.
¶ 39 Because I would affirm the firearm conviction, my analysis of the effective assistance of counsel issue also differs from the majority. The majority correctly states the factors we should consider to gauge whether a tactical decision not to request a lesser included offense instruction is sound or legitimate: (1) The difference in maximum penalties between the greater and lesser offenses; (2) whether the defense's case theory is the same for both the greater and lesser offenses; and (3) the overall risk to the defendant, given the totality of the developments at trial. State v. Grier, 150 Wash.App. 619, 640-41, 208 P.3d 1221 (2009) (citing State v. Pittman, 134 Wash.App. 376, 387-88, 166 P.3d 720 (2006); State v. Ward, 125 Wash. App. 243, 249-51, 104 P.3d 670 (2004)).
¶ 40 Since Breitung admitted to the firearm possession, he was likely to be convicted of that offense, which carried a standard sentencing range of 9 to 12 months. Thus, Breitung was facing significant incarceration time even without the second degree assault convictions. This lessens the impact of the first and third Grier factors. As to the second Grier factor, related to the defense's case theory, Breitung's counsel had a difficult chore. The idea that Breitung decided to approach and threaten the victims with a microscope lens is implausible to the point of being comedic. Even if this story made any initial sense, the gun the victims described matched one of the firearms Breitung's girl friend produced.
¶ 41 Faced with overwhelming evidence, defense counsel's strategy made little difference. Applied here, the Grier factors do not demonstrate ineffective assistance of counsel. In addition, two other factors are noteworthy. First, many defendants prefer prison time to a long spell in county jail and Breitung may be one of them. Thus, the prospect of a 13 to 17 months' prison sentence may have been preferable to a 9 to 12 months' stay in the county jail. Second, we should be cautious to not interfere with defendants' right to control their case's presentation. Otherwise, trial judges seeking to prevent error will impose jury instructions *625 on defendants who have made an informed choice to take a tactical risk. I would affirm.
NOTES
[1] Deputy Sheriff Jake Greger testified at trial that the microscope lens was "like a small spotting scope." RP at 238.
[2] The State additionally charged Breitung with one count of possession of a stolen firearm (count IV) but it dismissed that count before trial.
[3] Second degree assault is a class B felony, RCW 9A.36.021(2)(a), to which the provisions of the sentencing reform act (SRA) apply. RCW 9.94A.010; former RCW 9.94A.505(1) (2006); State v. Snedden, 149 Wash.2d 914, 922, 73 P.3d 995 (2003) (SRA applies only to felonies). See also RCW 9.94A.510 (sentencing grid); former RCW 9.94A.515 (2006) (table of seriousness levels/crimes); former RCW 9.94A.525 (2007) (offender score calculation provisions); former RCW 9.94A.505(2)(a)(i) ("unless another term of confinement applies, the court shall impose a sentence within the standard sentence range").
[4] As we noted in Grier, by finding ineffective assistance under the peculiar circumstances of this case, we do not alter the general rule that we will not second guess counsel's legitimate trial tactics. Nor do we open the door to an ineffective assistance challenge every time counsel is unsuccessful when employing an all or nothing strategy. See Grier, 150 Wash.App. at 646 n. 22, 208 P.3d 1221.
[5] RCW 9.41.047(1) has been amended several times since its 1994 enactment but the relevant notice requirement stated above has remained unchanged. See Laws of 1994, Spec. Sess. ch. 7, § 404 (effective July 1, 1994); Laws of 1996, ch. 295, § 3 (effective June 6, 1996); Laws of 2005, ch. 453, § 2 (effective July 24, 2005); Laws of 2009, ch. 293, § 2 (effective July 26, 2009).
[6] The parties assume that former RCW 9.41.047(1) applies, but neither the parties nor the documents in this record identify the statute under which Breitung was convicted in 1997. The record provided indicates that Breitung received a sentence of 365 days for the Assault DV conviction. Presumably, he was convicted of fourth degree assaultdomestic violence. See RCW 9A.36.041 (fourth degree assault); RCW 10.99.020(5)(d) (formerly RCW 10.99.020(3)(d) (1997) (Laws of 1997, ch. 338, § 53 (effective July 1, 1997))) (defining domestic violence to include fourth degree assault against a household member); see also RCW 9.41.040(2)(a)(i) (formerly RCW 9.41.040(1)(b)(i) (1997) (Laws of 1997 ch. 338, § 47 (effective July 1, 1997))) (fourth degree assault committed against a household member qualifies as predicate offense for second degree unlawful possession of firearm). In any event, we assume without deciding that Breitung was convicted in 1997 of "an offense making [him] ineligible to possess a firearm" as above described in former RCW 9.41.047(1)(a).
[7] There is also no contention by the State that Breitung received the required oral notice. See Minor, 162 Wash.2d at 800, 174 P.3d 1162 ("because the record is silent on oral notification, the assumption is no such notice was given").
[8] Nor does Carter resolve Breitung's case. There, the defendant had actual notice of the firearm prohibition because of an intervening felony conviction at which time he was notified that he was disqualified from firearm possession. Carter, 127 Wash.App. at 721, 112 P.3d 561. No similar circumstance is present here.
[9] Our decision in Leavitt was also based in part on the notion that "[d]ue process requires that `[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.'" Leavitt, 107 Wash.App. at 372 n. 17, 27 P.3d 622 (emphasis added) (alteration in original) (quoting Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888, 890 (1939)); see also State v. Wilson, 117 Wash.App. 1, 12, 75 P.3d 573 (2003) (due process violation may occur where statutory notice is required but not given).
[10] See e.g., Minor, 162 Wash.2d at 802, 174 P.3d 1162; State v. Stevens, 137 Wash.App. 460, 467, 153 P.3d 903 (2007), review denied, 162 Wash.2d 1012, 175 P.3d 1094 (2008); Carter, 127 Wash. App. at 720, 112 P.3d 561; State v. Sweeney, 125 Wash.App. 77, 83, 104 P.3d 46 (2005); Moore, 121 Wash.App. at 896, 91 P.3d 136; State v. Blum, 121 Wash.App. 1, 4, 85 P.3d 373 (2004); Leavitt, 107 Wash.App. at 368, 27 P.3d 622; State v. Semakula, 88 Wash.App. 719, 724, 946 P.2d 795 (1997); State v. Reed, 84 Wash.App. 379, 384, 928 P.2d 469 (1997).
[11] In this circumstance, the required notice imparts actual knowledge of the prohibition. "`Notice is knowledge or information legally equivalent to knowledge, brought home to the party notified in immediate connection with the subject to which the notice relates.'" Catholic Med. Ctr. v. Executive Risk Indem., Inc., 151 N.H. 699, 702, 867 A.2d 453, 456-57 (2005) (quoting Baldwin v. Fidelity Phenix Fire Insur. Co. of N.Y., 260 F.2d 951, 953-54 (6th Cir.1958)); see also Barron's Law Dictionary 317 (2nd ed. 1984) (defining "notice" as "`information concerning a fact, actually communicated to a person by an authorized person, or actually derived by him from a proper source'" (quoting United States v. Tuteur, 215 F.2d 415, 418 (7th Cir.1954))). Here the requirement of both oral and written notice of the firearm possession prohibition is clearly intended to impart actual notice of the illegality. "Actual notice" is defined in part as "direct positive knowledge of fact in question." Barron's Law Dictionary 317 (emphasis omitted).