MADSEN, J.
¶ 1 Joaquin Garcia was charged with unlawful possession of a firearm (UPFA) in the first degree. He moved for dismissal, arguing that the predicate offense relied on by the State in bringing the charge is invalid because the convicting court did not notify him of his ineligibility to possess firearms. The trial court dismissed the charge, and the Court of Appeals reversed, holding that Garcia had "otherwise had actual knowledge" of the firearm prohibition. State v. Garcia , 198 Wash. App. 527, 536, 393 P.3d 1243, review granted, 189 Wash.2d 1015, 404 P.3d 480 (2017).
¶ 2 This case presents two issues: (1) whether the trial court properly dismissed the UPFA charge on the basis that Garcia was not advised of the firearm prohibition flowing from Garcia's conviction at the time of his 1994 conviction, despite his later acquired knowledge that he was prohibited from possessing firearms, and (2) whether pretrial dismissal of a UPFA charge is proper where a defendant was not given notice of the firearm prohibition.
¶ 3 We hold that Garcia had "otherwise acquired actual knowledge" of his ineligibility to possess firearms. We also hold that whether a defendant received statutory notice that he was prohibited from possessing a firearm may properly be resolved pretrial.
FACTS
¶ 4 In November 2014, Garcia's girlfriend told a doctor at Seattle Indian Health Board, a charitable clinic, that Garcia "threatened her the night before and was currently in the waiting room," armed with a handgun. Clerk's Papers (CP) at 4. When the police officers arrived, Garcia's girlfriend explained that Garcia was armed, and she walked the police officers to the waiting room and identified Garcia. The police officers placed Garcia in handcuffs, and he admitted, "This is her gun and I am just carrying it for her. She knows I can't carry again." Id. Garcia also acknowledged that he was a convicted felon and that he knew he could not carry a gun. The police officers subsequently found a loaded .40 caliber Ruger semiautomatic handgun inside Garcia's waistband.
¶ 5 Garcia was charged with first degree UPFA based on Garcia's 1994 conviction for first degree rape of a child. Garcia was 13 *1079 years old at the time of his 1994 conviction, and pleaded guilty to the charge.
¶ 6 Prior to trial, Garcia filed a motion, pursuant to CrR 8.3(c), to prohibit the use of his 1994 conviction as a predicate offense for the crime. In his motion, Garcia argued that his 1994 conviction was not a constitutionally valid predicate offense because at the time of his sentencing he was not informed orally and in writing of his ineligibility to possess firearms, as required by RCW 9.41.047(1).
¶ 7 In response, the State conceded that it was unable to prove that Garcia was given either written or oral notice at the time of his 1994 conviction. However, the State did argue that despite its inability to prove that Garcia received his statutory advisement at the time of Garcia's conviction, it could prove that Garcia had subsequent actual knowledge of his ineligibility to possess firearms. Specifically, the State argued that Garcia was
notified approximately 10[1 ] times since 1996 of his [ineligibility] to possess a firearm,... that message has clearly gotten home to Mr. Garcia-I mean in all of the statements that he's making to the police, he is saying over and over again, "I know I am not supposed to have a gun."
Verbatim Report of Proceedings (VRP) at 36. The State also added that "the defense still needs to meet their burden ... and provide something which would indicate that Mr. Garcia never affirmatively received notice." Id. at 38. The trial court disagreed. Instead, in granting Garcia's motion, the trial judge explained that
as a matter of law, we need not at this stage conclude that this is any longer a matter of fact, and that it is-that it would become Mr. Garcia's burden of proof, because as a matter of law, the evidence does not establish that at the time of the underlying conviction, Mr. Garcia received either oral or written notice.
Id. at 62 (emphasis added).
¶ 8 The State appealed, and the Court of Appeals reversed in a published decision. Garcia, 198 Wash. App. at 529, 393 P.3d 1243. The Court of Appeals held that the trial court "erred by deciding Garcia's affirmative defense on a CrR 8.3(c) motion" and that lack of notice is an affirmative defense that Garcia must prove by a preponderance of evidence to the jury. Id. at 533, 393 P.3d 1243. The Court of Appeals also held that "the State may overcome the lack of notice affirmative defense by presenting other evidence of actual knowledge of the law or the firearm prohibition," and in this case, the subsequent knowledge that Garcia had of his ineligibility to possess firearms was sufficient to overcome his defense. Id. at 535-36, 393 P.3d 1243.
¶ 9 Garcia sought review of the Court of Appeals decision.
ANALYSIS
¶ 10 RCW 9.41.047(1)(a) states:
At the time a person is convicted ... the convicting or committing court shall notify the person, orally and in writing, that the person must immediately surrender any concealed pistol license and that the person may not possess a firearm unless his or her right to do so is restored by a court of record.
¶ 11 RCW 9.41.047(1) does not expressly provide a remedy for a convicting court's failure to comply with its terms. However, because of the statute's constitutional underpinnings, this court fashioned a remedy for such a violation in State v. Minor , 162 Wash.2d 796, 174 P.3d 1162 (2008). There, we reversed the defendant's conviction for unlawful possession of a firearm where the trial *1080 court failed to comply with the statutory notice requirement of RCW 9.41.047(1), holding, "The only remedy appropriate for the statutory violation is to reverse the current conviction." Id. at 804, 174 P.3d 1162.
¶ 12 We next considered a violation of RCW 9.41.047(1) in State v. Breitung , 173 Wash.2d 393, 267 P.3d 1012 (2011) ( Breitung II ). There, the defendant was convicted of "domestic violence assault, making him ineligible to own firearms," but was not notified of his ineligibility to possess firearms by the convicting court. Id. at 402, 267 P.3d 1012. The defendant was subsequently convicted of second degree UPFA. Id. at 397, 267 P.3d 1012. This court affirmed the Court of Appeals, which held:
"where a convicting court has failed to give the mandatory notice directed in RCW 9.41.047(1) and there is no evidence that the defendant has otherwise acquired actual knowledge of the firearm possession prohibition that RCW 9.41.047(1) is designed to impart, the defendant's subsequent conviction for unlawful possession of a firearm is invalid and must be reversed."
Id. at 402, 267 P.3d 1012 (emphasis added) (quoting State v. Breitung , 155 Wash. App. 606, 624, 230 P.3d 614 (2010) ( Breitung I ) ). Additionally, we stated that lack of notice must be established by the defendant as an affirmative defense. Id. at 403, 267 P.3d 1012. To rebut the defense, the court then placed the burden on the State to establish that the defendant had "otherwise acquired actual knowledge" of the firearm possession prohibition. Id. at 402-04, 267 P.3d 1012. Garcia argues that "otherwise acquired actual knowledge" is sufficient to support a charge of UPFA only if such knowledge is acquired "at the time of the underlying conviction." VRP at 62. Because the defendant in Breitung did not possess "otherwise acquired actual knowledge," the court did not define "otherwise acquired actual knowledge" or decide whether such knowledge had to be obtained contemporaneously with the conviction, as required by the statute.
¶ 13 The trial court, in its written order, held that
RCW 9.41.047(1) is the controlling statute. This statute required the court sentencing Mr. Garcia in the predicate serious offense to "at the time" inform Mr. Garcia orally and, additionally, in writing that that conviction rendered him ineligible to possess a firearm. The Court "shall" so notify. "The statute is unequivocal in its mandate." There is no evidence, circumstantial or direct, that Mr. Garcia was at the time of the underlying conviction relevant to count 1 informed of his prohibition concerning possessing a firearm, in any way.
CP at 541-42.
¶ 14 The State argues that failure to provide notice of a firearms prohibition at the time of the underlying conviction does not require dismissal per se. Instead, the State contends that it should have been able to present evidence of Garcia's subjective knowledge that he was prohibited from possessing firearms. Specifically, the State wished to present "evidence of Garcia's own admissions and actions showing longstanding actual knowledge," including "at least half a dozen formal advisements of his loss of firearm rights while being sentenced for his more-recent felonies." Suppl. Br. of Resp't at 6. The State urges that "otherwise acquired actual knowledge" is any knowledge or understanding by the defendant that he is prohibited from possessing a firearm, regardless of the timing, nature, or source of that information.
¶ 15 This "court's fundamental objective is to ascertain and carry out the Legislature's intent." Dep't of Ecology v. Campbell & Gwinn, LLC , 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002) (citing State v. J.M. , 144 Wash.2d 472, 480, 28 P.3d 720 (2001) ).
¶ 16 RCW 9.41.047(1)'s mandate is clear that a convicting court must notify a defendant orally and in writing of a firearm prohibition. The legislature's intent was to ensure that a convicting court informs the defendant that by committing a crime, he or she has lost the constitutional right to bear arms. See Breitung II, 173 Wash.2d at 403, 267 P.3d 1012 (" 'The statute is unequivocal in its mandate.' ... [D]espite RCW 9.41.047(1)'s failure to provide a remedy for violation, we explained that '[t]he presence of a notice requirement shows the legislature regarded *1081 such notice of deprivation of firearms rights as substantial.' " (third alteration in original) (quoting Minor , 162 Wash.2d at 803, 174 P.3d 1162 ) ).
¶ 17 While this court has not had occasion to decide what evidence will satisfy Breitung 's"otherwise acquired actual knowledge" standard, the Court of Appeals has addressed this issue in State v. Carter , 127 Wash. App. 713, 112 P.3d 561 (2005). In Carter, the defendant was charged with UPFA but argued the charge should have been dismissed because he was not notified of his loss of firearm rights at the time of his predicate offense. Id. at 715, 112 P.3d 561. The Court of Appeals affirmed the trial court's refusal to grant the defendant's motion, holding that the defendant had actual knowledge of the firearm prohibition because he was formally notified at the time of a felony conviction that occurred after the predicate offense but before the UPFA charge. Id. at 721, 112 P.3d 561. We agree with Carter that "otherwise acquired actual knowledge" may be sufficient to overcome a failure to comply with RCW 9.41.047(1)'s requirements when the defendant receives statutory notice following a subsequent conviction.
¶ 18 Such after acquired knowledge is the primary goal of notice required by RCW 9.41.047(1), thereby preserving a predicate offense for a UPFA charge. We hold that "otherwise acquired actual knowledge" need not be contemporaneous, but it must be consistent with the type of notice that RCW 9.41.047(1) is designed to provide defendants. Indeed, the Court of Appeals in Breitung I explained that
In this circumstance, the required notice imparts actual knowledge of the prohibition. " 'Notice is knowledge or information legally equivalent to knowledge, brought home to the party notified in immediate connection with the subject to which the notice relates.' " Catholic Med. Ctr. v. Executive Risk Indent. [Indem.], Inc. , 151 N.H. 699, 702, 867 A.2d 453, 456-57 (2005) (quoting Baldwin v. Fid. Phenix Fire Insur. Co. of N.Y., 260 F.2d 951, 953-54 (6th Cir. 1958) ); see also BARRON'S LAW DICTIONARY 317 (2d ed. 1984) (defining "notice" as " 'information concerning a fact, actually communicated to a person by an authorized person, or actually derived by him from a proper source' " (quoting United States v. Tuteur , 215 F.2d 415, 418 (7th Cir. 1954) ) ). Here the requirement of both oral and written notice of the firearm possession prohibition is clearly intended to impart actual notice of the illegality. "Actual notice" is defined in part as "direct positive knowledge of fact in question." BARRON'S LAW DICTIONARY 317 (emphasis omitted).
155 Wash. App. at 624 n.11, 230 P.3d 614.
¶ 19 Accordingly, information that is communicated by or derived from an authorized source, such as a judge, a probation officer, a member of the court staff, or defense counsel, even though later acquired, will meet the requirement of the statute.
¶ 20 Here, while Garcia was not notified of a firearm prohibition at the time of his 1994 conviction, he did receive formal notice at the time of his subsequent convictions. Because Garcia was formally notified by authorized persons during his subsequent convictions, he had "otherwise acquired actual knowledge" and his 1994 conviction constitutes a valid predicate offense.
¶ 21 The State also argues that the trial court erred in determining that lack of statutory notice is a question of law that a judge may determine pretrial because Breitung II characterizes lack of notice as an affirmative defense. In the State's view, the burden is on Garcia to "present actual evidence of some kind to prove to a factfinder at trial that he did not receive notice in 1994 and did not have actual knowledge of the prohibition when he unlawfully possessed the loaded handgun." Suppl. Br. of Resp't at 16. If Garcia meets his burden, the State would then be permitted to "rebut the affirmative defense by presenting evidence that the defendant knew that he was prohibited from possessing firearms." Id.
¶ 22 We begin with the observation made in Minor "that knowledge of the illegality of firearm possession is not an element of the crime."
*1082 162 Wash.2d at 802, 174 P.3d 1162. Moreover, while we characterized lack of statutory notice as an affirmative defense in Breitung II, because knowledge is not an element such a defense does not operate like a true affirmative defense. "An affirmative defense admits the defendant committed a criminal act but pleads an excuse for doing so." State v. Fry , 168 Wash.2d 1, 7, 228 P.3d 1 (2010) (plurality opinion). Lack of statutory notice does not excuse UPFA. Rather, lack of statutory notice acts as a bar to using the predicate offense as support for a UPFA charge.
¶ 23 Because a UPFA charge cannot proceed without a valid predicate offense, lack of statutory notice is a preliminary question that the trial court may resolve pretrial. Specifically, lack of statutory notice should be determined pretrial pursuant to the same procedures used in State v. Knapstad , 107 Wash.2d 346, 349, 729 P.2d 48 (1986). Thus, a defendant may raise lack of statutory notice by initiating a motion pretrial with a sworn affidavit. Id. at 356, 729 P.2d 48. The State may then submit its own affidavit to allege facts that rebut the defendant's affidavit. Id. The court may then decide the motion as a matter of law if there is insufficient evidence to prove that the defendant had notice of the firearm prohibition. Id. at 357, 729 P.2d 48.
CONCLUSION
¶ 24 We affirm the Court of Appeals' decision reversing dismissal of the charge of first degree UPFA and hold that Garcia had "otherwise acquired actual knowledge" of his ineligibility to possess firearms. Additionally, we hold that a trial court may dismiss a charge of UPFA for lack of notice pretrial.
WE CONCUR: Susan Owens, J., Debra L. Stephens, J., Charles K. Wiggins, J., Steven C. Gonzãlez, J., Mary I. Yu, J.

Garcia was convicted of several felonies after his 1994 conviction, including attempt to elude a police vehicle, rape of a child in the third degree, failure to register as a sex offender, assault in the third degree, and UPFA in the second degree. Garcia received formal written notice of his ineligibility to possess firearms after many of these convictions. Any of these convictions, with the attendant firearm advisement, could have supported a charge of second degree UPFA. Indeed, these other felonies were used as predicate offenses for second degree UPFA in the underlying case. However, Garcia's 1994 conviction is the only possible predicate offense that could support a conviction for first degree UPFA because none of his other felonies qualify as a "serious offense" under RCW 9.41.010(23).