[No. 84580-8.   En Banc.]

Argued October 11, 2011.     Decided December 29, 2011.

THE STATE OF WASHINGTON, *Petitioner*, v. ROBERT CHARLES BREITUNG, *Respondent*.

*Mark E. Lindquist, Prosecuting Attorney,* and *Thomas C. Roberts, Deputy,* for petitioner.

*Jennifer J. Sweigert* (of *Nielsen, Broman & Koch PLLC*), for respondent.

*Devin T. Theriot-Orr, Travis Stearns,* and *Ann E. Benson* on behalf of Washington Defender Association, amicus curiae.

¶1 C. JOHNSON, J. — This case involves two issues, the first being whether defense counsel was ineffective in not requesting a lesser included assault instruction. The Court of Appeals reversed based on *State v. Grier,* 150 Wn. App. 619, 208 P.3d 1221 (2009), which we recently reversed. *State v. Grier,* 171 Wn.2d 17, 246 P.3d 1260 (2011).[1] Based on our analysis in *Grier,* we reverse the Court of Appeals on the

---

[1] This case was deferred pending *Grier* and review was granted after *Grier* was filed.

ineffectiveness claim. The second issue is whether, in this case, the failure to give the statutorily required notice, under RCW 9.41.047(1),[2] of firearm prohibition as part of a prior conviction, requires reversal of Breitung's unlawful possession of a firearm conviction. The Court of Appeals reversed on this issue, which we affirm.

## FACTS

¶2 Respondent Robert Breitung was convicted of assaulting Ossie Cook and Richard Stevenson and of unlawfully possessing a firearm. On July 19, 2007, Cook and Stevenson, both auto mechanics, took a client's truck for a test drive. During the drive they stopped for cigarettes at a local smoke shop. There, Cook noticed a woman enter a black sports car and leave. When they left the smoke shop, Cook and Stevenson followed the same route as this woman and continued down a nearby gravel road, ostensibly to test the truck's off-road handling. As they were leaving the area, Breitung appeared and walked into the middle of the gravel road ahead of the truck. According to Cook and Stevenson, as they approached Breitung he pulled a handgun from behind his back, walked to the driver's side window, and pointed it at both men, telling them to stop following his girl friend and to "get the fuck out of here or I will kill you." 4 Verbatim Report of Proceedings (VRP) at 351. At some point during this altercation, Cook noticed parked nearby the black sports car he had seen at the smoke shop.

¶3 Shaken, Cook and Stevenson drove a few blocks and called the police, giving a detailed description of Breitung's handgun. When deputies arrived and questioned Breitung, he admitted confronting Cook and Stevenson but claimed he never used a firearm and never threatened to kill them. Rather, Breitung claimed that he pulled out a microscope lens and, hoping to make the truck stop, pointed it at the

---

[2] RCW 9.41.047(1) has been amended several times since enactment in 1994, but the relevant notice requirement has remained unchanged.

vehicle. According to Breitung, once the truck stopped he placed the lens back in his pocket, approached the truck, and said, "What's the problem, guys? You're scaring my girlfriend. Why did you follow her home?" 5 VRP at 424. When Cook and Stevenson failed to respond, Brietung continued, saying, "Why don't you guys split before there's a bigger problem, just go." 5 VRP at 424. To support his side of the story, Breitung retrieved the microscope lens from his trailer to show the deputies. When the deputies asked whether he owned a firearm, Breitung admitted he owned several, including a handgun matching Cook and Stevenson's description. Meanwhile, as the deputies talked to Breitung, his girl friend went into the trailer, retrieved the handgun, and gave it to the deputies.

¶4 Breitung was charged with two counts of second degree assault and one count of second degree unlawful possession of a firearm. At trial, the State proposed jury instructions for second degree assault and second degree unlawful possession. Defense counsel proposed no additional instructions, and Breitung was convicted on all three counts. The Court of Appeals reversed Breitung's assault convictions, holding that defense counsel was ineffective for failing to request lesser included offense instructions on fourth degree assault. The court also reversed Breitung's conviction for unlawful possession, holding that where as part of a prior conviction the court fails to give notice required by RCW 9.41.047(1), a subsequent conviction for unlawful possession is invalid.

## ISSUES

¶5 1.   Whether defense counsel was ineffective for failing to propose lesser included offense instructions?

¶6 2.   Whether the predicate offense court's failure to provide RCW 9.41.047's required notice of firearm possession prohibition warranted reversal?

## ANALYSIS

### 1. Ineffective Assistance

¶7 Washington follows the *Strickland*[3] standard to determine whether a defendant had constitutionally sufficient representation.[4] In finding ineffective assistance in this case, the Court of Appeals applied the three-pronged analysis from its opinion in *Grier*, which we rejected on review as distorting the *Strickland* standard.[5] *Grier*, 171 Wn.2d at 38. The result in this case is largely controlled by our *Grier* opinion. There, we reaffirmed our strict adherence to the *Strickland* standard and established that to demonstrate ineffective assistance of counsel, a defendant must overcome a strong presumption that counsel's performance was reasonable. When counsel's conduct can be characterized as a legitimate trial strategy, performance will not be deemed deficient. *Grier*, 171 Wn.2d at 33.

¶8 In this case, Breitung's counsel pursued a legitimate all or nothing strategy. Breitung was charged with

---

[3] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[4] To demonstrate ineffective assistance of counsel, a defendant must show (1) defense counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) the defendant was prejudiced by the deficiency. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (adopting two-pronged test from *Strickland*, 466 U.S. at 687).

[5] The Court of Appeals articulated the three-pronged analysis as follows:

> We consider three factors "to gauge whether a tactical decision not to request a lesser included offense instruction is sound or legitimate: (1) The difference in maximum penalties between the greater and lesser offenses; (2) whether the defense's theory of the case is the same for both the greater and lesser offenses; and (3) the overall risk to the defendant, given the totality of the developments at trial."

*State v. Breitung*, 155 Wn. App. 606, 615, 230 P.3d 614 (2010) (quoting *Grier*, 150 Wn. App. at 640-41). In rejecting this test, we held the first two factors "tip the scales in favor of deficient performance, despite the *Strickland* presumption of effective assistance." As to the third factor, by "authorizing courts to make an objective determination as to whether a given level of risk is acceptable, [the third factor] overlooks the subjective nature of the decision to pursue an all or nothing approach." *Grier*, 171 Wn.2d at 38-39.

second degree assault, requiring the jury to find he intended to create apprehension in Cook and Stevenson using a deadly weapon. *See* RCW 9A.36.021.[6] Jurors were specifically instructed that use of a deadly weapon was an element of second degree assault the State must prove beyond a reasonable doubt. Clerk's Papers (CP) at 27-28. A separate instruction informed jurors that "[a] firearm, whether loaded or unloaded, is a deadly weapon." CP at 26. While Cook and Stevenson testified that Breitung threatened them using a firearm, Breitung and a witness testified to the contrary. Breitung testified he pointed a microscope lens, and not a handgun, at Cook and Stevenson to stop the truck. 5 VRP at 424-25. His neighbor, Mr. Leverett, testified he saw Breitung talking to Cook and Stevenson but never saw Breitung wield a firearm at any time. 5 VRP at 399-401. In closing arguments, defense counsel reminded the jurors of the State's heavy burden and argued the State failed to prove beyond a reasonable doubt that Breitung used a firearm or threatened the victims. 6 VRP at 549-67. Counsel further argued the jury instructions did not list a microscope as a deadly weapon: "[This microscope] that's not a deadly weapon, according to the jury instructions. If he [had the microscope], it's reasonable doubt. You can't convict." 6 VRP at 565.

¶9 Given Cook's and Stevenson's testimony, and the circumstantial evidence against Breitung, pursuing an all-or-nothing strategy in this case was a legitimate approach in defense. The defense theory was that no assault occurred. Had the jury concluded Breitung used a microscope, and not a firearm as the State contended, it would have acquitted under the second degree assault instruction. There was, after all, no evidence Breitung wielded the lens as a deadly weapon. "Where a lesser included offense instruction would weaken the defendant's claim of innocence, the failure to

---

[6] Under RCW 9A.36.021(1)(c), a person commits assault in the second degree if he or she, under circumstances not amounting to assault in the first degree, assaults another with a deadly weapon.

request a lesser included offense instruction is a reasonable strategy." *State v. Hassan*, 151 Wn. App. 209, 220, 211 P.3d 441 (2009) (citing *Strickland*, 466 U.S. at 691). It was Breitung's prerogative to pursue this approach, and we will not presume otherwise.

¶10 Breitung, however, argues that he was deprived of his prerogative to risk an all-or-nothing strategy because, unlike defense counsel in *Grier*, his counsel chose this approach without first consulting him. In *Grier*, we confirmed that "the decision to exclude or include lesser included offense instructions is a decision that requires input from both the defendant and [defense] counsel but ultimately rests with defense counsel." *Grier*, 171 Wn.2d at 32. Grier's counsel consulted with Grier about withdrawing a request for lesser included offense instructions and evidence of this consultation was on the record, a fact we referenced several times. For instance, in defining the issue to be decided, we stated, "This case requires us to determine whether Ms. Grier's defense counsel was ineffective in withdrawing a request for jury instructions on . . . lesser included offenses . . . *after consulting with his client*." *Grier*, 171 Wn.2d at 20 (emphasis added). We further stated that "assuming that defense counsel has *consulted* with the client in pursuing an all or nothing approach, a court should not second-guess that course of action . . . ." *Grier*, 171 Wn.2d at 39 (emphasis added).

¶11 Breitung is correct; there is no evidence in the record that his counsel consulted him before forgoing instruction on fourth degree assault. Conversely, there is no evidence in the record to show consultation did not occur.[7] As we acknowledged in *Grier*, the *Strickland* standard is highly

---

[7] At sentencing, Breitung told the trial judge that his counsel was ineffective, that communication with counsel was poor, that he was misrepresented, and that "he was never informed of different forms of defense." VRP Sentencing at 23. The trial judge responded, "If I had seen what I believed to be ineffective assistance to the extent that I didn't think Mr. Breitung was getting a fair shake at trial or that there was obvious information that wasn't getting to the jury, I would have intervened in some fashion. I didn't see that." VRP Sentencing at 28. There was no

deferential. It requires us to presume counsel's performance was reasonable. The burden is on the defendant to show deficient performance. Absent evidence in the record of a failure to consult, therefore, we presume consultation occurred. Performance was therefore not deficient and the first prong of the *Strickland* standard is not met. [8]

### 2. *Unlawful Possession*

¶12 In *State v. Minor*, 162 Wn.2d 796, 174 P.3d 1162 (2008), we analyzed the notice requirement of RCW 9.41-.047(1), which requires a convicting court to give notice of the prohibition of the right to possess firearms. The statute provides:

> At the time a person is convicted . . . of an offense making the person ineligible to possess a firearm . . . the [convicting] court shall notify the person, orally and in writing, that the person . . . may not possess a firearm unless his or her right to do so is restored by a court of record.

RCW 9.41.047(1)(a). While RCW 9.41.047(1) does not expressly provide a remedy for violation, we reversed Minor's unlawful possession of firearms conviction based on the predicate offense court's failure to give oral or written notice. The order included the required written notice but the "box" next to that notice was left "unchecked," indicating the prohibition was not applicable. We articulated the issue as whether Minor had been "affirmatively misled" by the predicate offense court's failure to check the box. *Minor*, 162 Wn.2d at 801. Because we held the predicate offense court misled Minor to believe possession was lawful, we left open the question of whether failure to comply with RCW 9.41.047(1) alone warrants reversal. *Minor*, 162 Wn.2d at 804 n.7. Here, the Court of Appeals held it does:

---

specific discussion of whether Breitung's defense counsel consulted Breitung before forgoing jury instructions, however.

[8] As we also observed in *Grier*, this type of assertion is properly pursued in a personal restraint petition, where facts outside of the record can be established.

[W]e hold that where a convicting court has failed to give the mandatory notice directed in RCW 9.41.047(1) and there is no evidence that the defendant has otherwise acquired actual knowledge of the firearm possession prohibition that RCW 9.41.047(1) is designed to impart, the defendant's subsequent conviction for unlawful possession of a firearm is invalid and must be reversed.

*Breitung*, 155 Wn. App. at 624.

¶13 Breitung was convicted in 1997 of domestic violence assault, making him ineligible to own firearms. The convicting court, however, failed to notify him of this ineligibility. Unlike the judgment and sentence in *Minor*, Breitung's 1997 court order did not mention firearm prohibition; thus, there were no boxes mistakenly left unchecked. In *Minor*, we noted that had the judgment and sentence omitted any language regarding the firearms prohibition, the State's argument that Minor was not affirmatively misled would have been more persuasive. *Minor*, 162 Wn.2d at 803. The Court of Appeals in this case recognized that Breitung's 1997 court order, while failing to notify Breitung of firearm prohibition, did not affirmatively mislead him. We agree, and as such, this case presents the issue left open by *Minor*.

¶14 As we noted in *Minor*, ignorance of the law is generally not a defense, and a convicted felon's knowledge that his right to firearm ownership is prohibited is not an element of the crime of unlawful possession of a firearm. However, failure to provide a remedy for what is a clear statutory violation of RCW 9.41.047(1) ignores the statute's mandate and deprives the statute of any real bite. In *Minor*, we recognized the legislature's concern over interfering with a citizen's right to possess and use firearms. "[I]n enacting [RCW 9.41.047(1)], the legislature balanced the concern with escalating violence, which some commentators blamed on the 'ready availability of firearms,' with the concern that restricting firearm availability will infringe upon the right of a law-abiding citizen to keep and bear arms." *Minor*, 162 Wn.2d at 803 (quoting FINAL B. REP. on

Engrossed Second Substitute H.B. 2319, at 2, 53d Leg., Reg. Sess. (Wash. 1994)). We made it clear that RCW 9.41.047(1) "requires the convicting court to provide oral *and* written notice. The statute is unequivocal in its mandate." *Minor*, 162 Wn.2d at 803 (emphasis added). Thus, despite RCW 9.41.047(1)'s failure to provide a remedy for violation, we explained that "[t]he presence of a notice requirement shows the legislature regarded such notice of deprivation of firearms rights as substantial. Relief consistent with the purpose of the statutory requirement *must* be available where the statute has been violated." *Minor*, 162 Wn.2d at 803-04 (emphasis added).

¶15 Our directive in *Minor* complements our robust and long-standing protection of the individual right to bear arms, a protection underscored, at least in part, by the piecemeal and cautioned fashion in which the legislature has defined predicate offense crimes under the unlawful possession of firearms statute. *See* RCW 9.41.010, .040. Recognizing this, the Court of Appeals held Breitung was entitled to notice and, in its absence, to reversal. We agree.

¶16 Lack of notice under RCW 9.41.047(1) is an affirmative defense, which Breitung must establish by a preponderance of the evidence. In his September 2, 2008, motion to dismiss the unlawful possession of firearms charge, Breitung affirmatively established that the municipal court failed to notify him of his firearm prohibition as required by RCW 9.41.047(1). Importantly, the statute requires both written and oral notice. The State did not argue or establish that Breitung received oral notice from the court, and no evidence of oral notification appears in the record. "[B]ecause the record is silent on oral notification, the assumption is no such notice was given." *Minor*, 162 Wn.2d at 800. Nor did Breitung receive written notice in the 1997 court order. The judgment and sentence notified Breitung he must "[h]ave law abiding behavior," "[h]ave no similar incidents," and "[h]ave no hostile contact with April Breitung"; it notified him at what time he was to report to

jail and that his sentences were to run concurrently; and it notified him that he was to undergo electronic monitoring. Order of the Tacoma Municipal Court, *City of Tacoma v. Breitung*, No. D 2590 (Wash. Oct. 6, 1997). It did not, in any way, mention firearms or firearm prohibition.

¶17 The State did not establish that Breitung otherwise had knowledge of the law or notice of the firearm prohibition. On the contrary, the record evidences a lack of actual knowledge on Breitung's part. Based on this record, we conclude Breitung was not notified of his firearm prohibition as required under RCW 9.41.047(1) and did not otherwise have notice of the prohibition against possession of firearms. Absent that notice, he is entitled to reversal of the unlawful possession of firearms conviction.

## CONCLUSION

¶18 We reverse the Court of Appeals on the ineffective assistance of counsel issue and reinstate the second degree assault convictions. Regarding the illegal possession of a firearm charge, we affirm the Court of Appeals decision vacating the unlawful possession charge.

MADSEN, C.J., and ALEXANDER, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.