

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE __JUL 0 5 2018__

~~Fairhurst, CJ~~
CHIEF JUSTICE

This opinion was filed for record

at __8:00 am__ on __July 5, 2018__

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 94457-1 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| JOAQUIN DAVID GARCIA, | ) | |
| | ) | |
| Petitioner. | ) | Filed __JUL 0 5 2018__ |
| | ) | |

MADSEN, J.—Joaquin Garcia was charged with unlawful possession of a firearm (UPFA) in the first degree. He moved for dismissal, arguing that the predicate offense relied on by the State in bringing the charge is invalid because the convicting court did not notify him of his ineligibility to possess firearms. The trial court dismissed the charge, and the Court of Appeals reversed, holding that Garcia had "otherwise had actual knowledge" of the firearm prohibition. *State v. Garcia*, 198 Wn. App. 527, 536, 393 P.3d 1243, *review granted*, 189 Wn.2d 1015, 404 P.3d 480 (2017).

This case presents two issues: (1) whether the trial court properly dismissed the UPFA charge on the basis that Garcia was not advised of the firearm prohibition flowing

from Garcia's conviction *at the time* of his 1994 conviction, despite his *later* acquired knowledge that he was prohibited from possessing firearms, and (2) whether pretrial dismissal of a UPFA charge is proper where a defendant was not given notice of the firearm prohibition.

We hold that Garcia had "otherwise acquired actual knowledge" of his ineligibility to possess firearms. We also hold that whether a defendant received statutory notice that he was prohibited from possessing a firearm may properly be resolved pretrial.

## FACTS

In November 2014, Garcia's girlfriend told a doctor at Seattle Indian Health Board, a charitable clinic, that Garcia "threatened her the night before and was currently in the waiting room," armed with a handgun. Clerk's Papers (CP) at 4. When the police officers arrived, Garcia's girlfriend explained that Garcia was armed, and she walked the police officers to the waiting room and identified Garcia. The police officers placed Garcia in handcuffs, and he admitted, "This is her gun and I am just carrying it for her. She knows I can't carry again." *Id.* Garcia also acknowledged that he was a convicted felon and that he knew he could not carry a gun. The police officers subsequently found a loaded .40 caliber Ruger semiautomatic handgun inside Garcia's waistband.

Garcia was charged with first degree UPFA based on Garcia's 1994 conviction for first degree rape of a child. Garcia was 13 years old at the time of his 1994 conviction, and pleaded guilty to the charge.

Prior to trial, Garcia filed a motion, pursuant to CrR 8.3(c), to prohibit the use of his 1994 conviction as a predicate offense for the crime. In his motion, Garcia argued that his 1994 conviction was not a constitutionally valid predicate offense because at the time of his sentencing he was not informed orally and in writing of his ineligibility to possess firearms, as required by RCW 9.41.047(1).

In response, the State conceded that it was unable to prove that Garcia was given either written or oral notice at the time of his 1994 conviction. However, the State did argue that despite its inability to prove that Garcia received his statutory advisement at the time of Garcia's conviction, it could prove that Garcia had *subsequent* actual knowledge of his ineligibility to possess firearms. Specifically, the State argued that Garcia was

> notified approximately 10[1] times since 1996 of his [ineligibility] to possess a firearm, . . . that message has clearly gotten home to Mr. Garcia—I mean in all of the statements that he's making to the police, he is saying over and over again, "I know I am not supposed to have a gun."

Verbatim Report of Proceedings (VRP) at 36. The State also added that "the defense still needs to meet their burden . . . and provide something which would indicate that Mr.

---

[1] Garcia was convicted of several felonies after his 1994 conviction, including attempt to elude a police vehicle, rape of a child in the third degree, failure to register as a sex offender, assault in the third degree, and UPFA in the second degree. Garcia received formal written notice of his ineligibility to possess firearms after many of these convictions. Any of these convictions, with the attendant firearm advisement, could have supported a charge of second degree UPFA. Indeed, these other felonies were used as predicate offenses for second degree UPFA in the underlying case. However, Garcia's 1994 conviction is the only possible predicate offense that could support a conviction for first degree UPFA because none of his other felonies qualify as a "serious offense" under RCW 9.41.010(23).

Garcia never affirmatively received notice." *Id.* at 38. The trial court disagreed. Instead, in granting Garcia's motion, the trial judge explained that

> as a matter of law, we need not at this stage conclude that this is any longer a matter of fact, and that it is—that it would become Mr. Garcia's burden of proof, because as a matter of law, the evidence does not establish that *at the time of the underlying conviction*, Mr. Garcia received either oral or written notice.

*Id.* at 62 (emphasis added).

The State appealed, and the Court of Appeals reversed in a published decision. *Garcia*, 198 Wn. App. at 529. The Court of Appeals held that the trial court "erred by deciding Garcia's affirmative defense on a CrR 8.3(c) motion" and that lack of notice is an affirmative defense that Garcia must prove by a preponderance of evidence to the jury. *Id.* at 533. The Court of Appeals also held that "the State may overcome the lack of notice affirmative defense by presenting other evidence of actual knowledge of the law or the firearm prohibition," and in this case, the subsequent knowledge that Garcia had of his ineligibility to possess firearms was sufficient to overcome his defense. *Id.* at 535-36.

Garcia sought review of the Court of Appeals decision.

## ANALYSIS

RCW 9.41.047(1)(a) states:

> At the time a person is convicted . . . the convicting or committing court shall notify the person, orally and in writing, that the person must immediately surrender any concealed pistol license and that the person may not possess a firearm unless his or her right to do so is restored by a court of record.

RCW 9.41.047(1) does not expressly provide a remedy for a convicting court's failure to comply with its terms. However, because of the statute's constitutional underpinnings, this court fashioned a remedy for such a violation in *State v. Minor*, 162 Wn.2d 796, 174 P.3d 1162 (2008). There, we reversed the defendant's conviction for unlawful possession of a firearm where the trial court failed to comply with the statutory notice requirement of RCW 9.41.047(1), holding, "The only remedy appropriate for the statutory violation is to reverse the current conviction." *Id.* at 804.

We next considered a violation of RCW 9.41.047(1) in *State v. Breitung*, 173 Wn.2d 393, 267 P.3d 1012 (2011) (*Breitung* II). There, the defendant was convicted of "domestic violence assault, making him ineligible to own firearms," but was not notified of his ineligibility to possess firearms by the convicting court. *Id.* at 402. The defendant was subsequently convicted of second degree UPFA. *Id.* at 397. This court affirmed the Court of Appeals, which held:

> "where a convicting court has failed to give the mandatory notice directed in RCW 9.41.047(1) and there is no evidence that the defendant has *otherwise acquired actual knowledge of the firearm possession prohibition that RCW 9.41.047(1) is designed to impart,* the defendant's subsequent conviction for unlawful possession of a firearm is invalid and must be reversed."

*Id.* at 402 (emphasis added) (quoting *State v. Breitung*, 155 Wn. App. 606, 624, 230 P.3d 614 (2010) (*Breitung* I)). Additionally, we stated that lack of notice must be established by the defendant as an affirmative defense. *Id.* at 403. To rebut the defense, the court then placed the burden on the State to establish that the defendant had "otherwise acquired actual knowledge" of the firearm possession prohibition. *Id.* at 402-04. Garcia

5

argues that "otherwise acquired actual knowledge" is sufficient to support a charge of UPFA only if such knowledge is acquired "at the time of the underlying conviction." VRP at 62. Because the defendant in *Breitung* did not possess "otherwise acquired actual knowledge," the court did not define "otherwise acquired actual knowledge" or decide whether such knowledge had to be obtained contemporaneously with the conviction, as required by the statute.

The trial court, in its written order, held that

> RCW 9.41.047(1) is the controlling statute. This statute required the court sentencing Mr. Garcia in the predicate serious offense to "at the time" inform Mr. Garcia orally and, additionally, in writing that that conviction rendered him ineligible to possess a firearm. The Court "shall" so notify. "The statute is unequivocal in its mandate." There is no evidence, circumstantial or direct, that Mr. Garcia was at the time of the underlying conviction relevant to count 1 informed of his prohibition concerning possessing a firearm, in any way.

CP at 541-42.

The State argues that failure to provide notice of a firearms prohibition at the time of the underlying conviction does not require dismissal per se. Instead, the State contends that it should have been able to present evidence of Garcia's subjective knowledge that he was prohibited from possessing firearms. Specifically, the State wished to present "evidence of Garcia's own admissions and actions showing longstanding actual knowledge," including "at least half a dozen formal advisements of his loss of firearm rights while being sentenced for his more-recent felonies." Suppl. Br. of Resp't at 6. The State urges that "otherwise acquired actual knowledge" is any

knowledge or understanding by the defendant that he is prohibited from possessing a firearm, regardless of the timing, nature, or source of that information.

This "court's fundamental objective is to ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002) (citing *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)).

RCW 9.41.047(1)'s mandate is clear that a convicting court must notify a defendant orally and in writing of a firearm prohibition. The legislature's intent was to ensure that a convicting court informs the defendant that by committing a crime, he or she has lost the constitutional right to bear arms. *See Breitung* II, 173 Wn.2d at 403 ("'The statute is unequivocal in its mandate.' . . . [D]espite RCW 9.41.047(1)'s failure to provide a remedy for violation, we explained that '[t]he presence of a notice requirement shows the legislature regarded such notice of deprivation of firearms rights as substantial.'" (third alteration in original) (quoting *Minor*, 162 Wn.2d at 803)).

While this court has not had occasion to decide what evidence will satisfy *Breitung*'s "otherwise acquired actual knowledge" standard, the Court of Appeals has addressed this issue in *State v. Carter*, 127 Wn. App. 713, 112 P.3d 561 (2005). In *Carter*, the defendant was charged with UPFA but argued the charge should have been dismissed because he was not notified of his loss of firearm rights at the time of his predicate offense. *Id.* at 715. The Court of Appeals affirmed the trial court's refusal to grant the defendant's motion, holding that the defendant had actual knowledge of the firearm prohibition because he was formally notified at the time of a felony conviction

7

that occurred after the predicate offense but before the UPFA charge. *Id.* at 721. We agree with *Carter* that "otherwise acquired actual knowledge" may be sufficient to overcome a failure to comply with RCW 9.41.047(1)'s requirements when the defendant receives statutory notice following a subsequent conviction.

Such after acquired knowledge is the primary goal of notice required by RCW 9.41.047(1), thereby preserving a predicate offense for a UPFA charge. We hold that "otherwise acquired actual knowledge" need not be contemporaneous, but it must be consistent with the type of notice that RCW 9.41.047(1) is designed to provide defendants. Indeed, the Court of Appeals in *Breitung* I explained that

> In this circumstance, the required notice imparts actual knowledge of the prohibition. " 'Notice is knowledge or information legally equivalent to knowledge, brought home to the party notified in immediate connection with the subject to which the notice relates.' " *Catholic Med. Ctr. v. Executive Risk Indem., Inc.*, 151 N.H. 699, 702, 867 A.2d 453, 456-57 (2005) (quoting *Baldwin v. Fid. Phenix Fire Insur. Co. of N.Y.*, 260 F.2d 951, 953-54 (6th Cir. 1958)); *see also* BARRON'S LAW DICTIONARY 317 (2d ed. 1984) (defining "notice" as " 'information concerning a fact, actually communicated to a person by an authorized person, or actually derived by him from a proper source' " (quoting *United States v. Tuteur*, 215 F.2d 415, 418 (7th Cir. 1954))). Here the requirement of both oral and written notice of the firearm possession prohibition is clearly intended to impart actual notice of the illegality. "Actual notice" is defined in part as "direct positive knowledge of fact in question." BARRON'S LAW DICTIONARY 317 (emphasis omitted).

155 Wn. App. at 624 n.11.

Accordingly, information that is communicated by or derived from an authorized source, such as a judge, a probation officer, a member of the court staff, or defense counsel, even though later acquired, will meet the requirement of the statute.

8

Here, while Garcia was not notified of a firearm prohibition at the time of his 1994 conviction, he did receive formal notice at the time of his subsequent convictions. Because Garcia was formally notified by authorized persons during his subsequent convictions, he had "otherwise acquired actual knowledge" and his 1994 conviction constitutes a valid predicate offense.

The State also argues that the trial court erred in determining that lack of statutory notice is a question of law that a judge may determine pretrial because *Breitung* II characterizes lack of notice as an affirmative defense. In the State's view, the burden is on Garcia to "present actual evidence of some kind to prove to a factfinder at trial that he did not receive notice in 1994 and did not have actual knowledge of the prohibition when he unlawfully possessed the loaded handgun." Suppl. Br. of Resp't at 16. If Garcia meets his burden, the State would then be permitted to "rebut the affirmative defense by presenting evidence that the defendant knew that he was prohibited from possessing firearms." *Id.*

We begin with the observation made in *Minor* "that knowledge of the illegality of firearm possession is not an element of the crime." 162 Wn.2d at 802. Moreover, while we characterized lack of statutory notice as an affirmative defense in *Breitung* II, because knowledge is not an element such a defense does not operate like a true affirmative defense. "An affirmative defense admits the defendant committed a criminal act but pleads an excuse for doing so." *State v. Fry*, 168 Wn.2d 1, 7, 228 P.3d 1 (2010)

9

(plurality opinion). Lack of statutory notice does not excuse UPFA. Rather, lack of statutory notice acts as a bar to using the predicate offense as support for a UPFA charge.

Because a UPFA charge cannot proceed without a valid predicate offense, lack of statutory notice is a preliminary question that the trial court may resolve pretrial. Specifically, lack of statutory notice should be determined pretrial pursuant to the same procedures used in *State v. Knapstad*, 107 Wn.2d 346, 349, 729 P.2d 48 (1986). Thus, a defendant may raise lack of statutory notice by initiating a motion pretrial with a sworn affidavit. *Id.* at 356. The State may then submit its own affidavit to allege facts that rebut the defendant's affidavit. *Id.* The court may then decide the motion as a matter of law if there is insufficient evidence to prove that the defendant had notice of the firearm prohibition. *Id.* at 357.

## CONCLUSION

We affirm the Court of Appeals' decision reversing dismissal of the charge of first degree UPFA and hold that Garcia had "otherwise acquired actual knowledge" of his ineligibility to possess firearms. Additionally, we hold that a trial court may dismiss a charge of UPFA for lack of notice pretrial.

No. 94457-1

_Madsen, J._

WE CONCUR:

_Wiggins, J._

_González, J._

_Owens, J._

_Stephens, J._

_Yu, J._

*State v. Garcia*, No. 94457-1
Fairhurst, C.J. (dissenting)

No. 94457-1

FAIRHURST, C.J. (dissenting)—RCW 9.41.047(1)(a) requires oral and written notice of the ineligibility to possess firearms at the time a person is convicted. I disagree with the majority's creation of an evidentiary standard to cure violations of RCW 9.41.047(1)(a). I would reverse the Court of Appeals and reinstate the trial court's dismissal of Joaquin David Garcia's unlawful possession of a firearm (UPFA) charge in the first degree.

Garcia brought a pretrial motion to dismiss his first degree UPFA charge because his 1994 predicate offense failed to comply with the notice requirements of RCW 9.41.047(1)(a).[1] The State conceded the lack of statutory notice. This court

---

[1] While not necessary for my legal analysis, I call attention to the underlying charges in this case and the State's prosecutorial decisions. *See* majority at 2-3. Garcia was charged with first and second degree UPFA. His first degree UPFA charge is based on a 1994 conviction that he pleaded guilty to at age 13. There is no evidence that Garcia was given oral or written notice of his ineligibility to possess firearms as required by RCW 9.41.047(1)(a). Similarly, the defendant in *State v. Minor* had just turned 15 years old at his disposition hearing when the court failed to give oral and written notice of his ineligibility to possess firearms. 162 Wn.2d 796, 804, 174 P.3d 1162 (2008) ("It is reasonable to believe a [15-year-old] would not necessarily know the degrees of crimes or how their crime may impair their rights.").

Subsequently, Garcia was convicted of several other felonies and received formal notice of his ineligibility to possess firearms. However, Garcia's 1994 conviction is the only conviction that can support *first* degree UPFA because it was a "serious offense." RCW 9.41.040(1)(a),

1

has already established that "[l]ack of notice under RCW 9.41.047(1) is an affirmative defense, which [the defendant] must establish by a preponderance of the evidence." *State v. Breitung*, 173 Wn.2d 393, 403, 267 P.3d 1012 (2011).[2] Lack of notice *under* RCW 9.41.047(1) means notice pursuant to the statute. The statute has three clear requirements. *State v. Minor*, 162 Wn.2d 796, 803, 174 P.3d 1162 (2008) ("The statute is unequivocal in its mandate."). First, notice must be given "[a]*t the time* a person is convicted or found not guilty by reason of insanity . . . or *at the time* a person is committed by court order." RCW 9.41.047(1)(a) (emphasis added). Second, notice must be given by "the convicting or committing court." *Id.* And third, notice must be given "orally and in writing." *Id.* "The presence of a notice requirement shows the legislature regarded such notice of deprivation of firearms rights as substantial. Relief consistent with the purpose of the statutory requirement must be available where the statute has been violated." *Minor*, 162 Wn.2d at 803-04.

---

.010(23). His other felonies support only second degree UPFA. The distinction between first and second degree UPFA is more than just a formality. RCW 9.41.040; RCW 9A.20.021 (second degree UPFA is a class C felony with a 5 year maximum sentence; first degree UPFA is a class B felony with a 10 year maximum sentence). We should not allow the State to create legal work-arounds to increase their charges.

[2] "An affirmative defense admits the defendant committed a criminal act but pleads an excuse for doing so. . . . An affirmative defense does not negate any elements of the charged crime." *State v. Fry*, 168 Wn.2d 1, 7, 228 P.3d 1 (2010).

Following *Breitung*, Garcia established his affirmative defense, which the State failed to rebut. Despite the language of the statute, the majority circumvents this simple conclusion and holds that notice "need not be contemporaneous" with the conviction and can be communicated by people other than the court (e.g., court staff or defense counsel). Majority at 8. I find this to be hugely problematic.

In *Breitung*, we affirmed the Court of Appeals and held that the defendant was entitled to reversal of his UPFA conviction. 173 Wn.2d at 403. After explaining that lack of statutory notice is an affirmative defense to UPFA, "we conclude[d that] Breitung was not notified of his firearm prohibition as required under RCW 9.41.047(1) and did not otherwise have notice of the prohibition against possession of firearms. Absent that notice, he [was] entitled to reversal of the [UPFA] conviction." *Id.* at 404. The "otherwise acquired actual knowledge" standard that the majority focuses on comes from the *Breitung* Court of Appeals decision, which was quoted within this court's *Breitung* opinion as well. *Id.* at 402 (quoting *State v. Breitung*, 155 Wn. App. 606, 624, 230 P.3d 614 (2010)). The Court of Appeals cited no authority for that standard, nor did this court. The majority implies that this language created an open question: "[W]hat evidence will satisfy *Breitung*'s 'otherwise acquired actual knowledge' standard[?]." Majority at 7. Herein lies the problem. There is no open question. The statute clearly states what is required. RCW

3

9.41.047(1)(a). Rebuttal evidence must be evidence that proves compliance with the statute (e.g., court transcripts, judgment and sentence documents, video or audio recordings, testimony or affidavits from people who were present at the sentencing). The majority's rebuttal standard is completely untethered from the statute and should be rejected.[3] I respectfully dissent.

---

[3] Procedurally, I agree with the majority that the trial court can resolve the affirmative defense pretrial when it can be determined as a matter of law that there is insufficient evidence to prove that the required notice was provided. Majority at 10.

Fairhurst, CJ.

George McCld, J.

5