IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39101-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID MICHAEL CLUTINGER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — David Michael Clutinger appeals his conviction for second degree rape. He argues his trial counsel provided ineffective assistance by requesting an unnecessary and inapplicable affirmative defense instruction. We disagree and affirm.

FACTS

Around noon one spring day, N.D. arrived for her scheduled shift as a cocktail server at Borracho Tacos and Tequileria, a bar and restaurant in downtown Spokane. Because Borracho was not busy that day, N.D. was told she was not needed to work her shift. She decided to stay at Borracho and have some drinks with friends. She drank one

shot of alcohol, then had another drink with a coworker who also was not working that day.

David Clutinger arrived at Borracho and joined N.D. and the coworker for drinks. N.D. knew Clutinger as a regular, who frequently drank at the bar. She recalled that Clutinger would flirt with her while she worked.

The group stayed at Borracho for less than an hour, then walked across the street to the Red Lion Pub and BBQ. Once there, Clutinger bought N.D. an alcoholic drink. After a brief stay at that bar, the group made their way to another nearby bar, Fast Eddie's, where Clutinger bought N.D. another alcoholic drink.

While at Fast Eddie's, N.D. saw her boss, who owned both Borracho and Fast Eddie's. N.D. recalled it his birthday, so she and her coworker ordered shots for the three of them to drink together. N.D. left her drink unattended while she went to her boss's table to drink the shots. N.D. then returned and finished her drink. N.D. did not recall having any other drinks with Clutinger that day. The coworker left the group after finishing her drinks at Fast Eddie's because she felt dazed and foggy.

After N.D. finished her drink, she saw another coworker outside riding on an electric Lime Scooter. She posed for a picture on the scooter with her coworker and rode it around the block with him. N.D. recalled being "buzzed, like I'd had a few drinks, but

2

not to the point where I couldn't function or hold onto a scooter or anything like that."

Rep. of Proc. (RP) (May 24, 2022) at 308-09.

N.D. did not recall anything that happened that afternoon after riding the scooter. Although N.D. did not recall, witnesses testified that N.D. and Clutinger went to two nearby bar and restaurants, Saranac Public House and Zola, which are both within walking distance of Fast Eddie's. After leaving Zola at around 4:30 p.m., N.D. and Clutinger returned to Borracho.

The bartender at Borracho recalled seeing N.D. with Clutinger that day. He recalled N.D. being "[i]ntoxicated" and "[u]nable to properly stand without assistance." RP (May 24, 2022) at 378. He recalled hearing Clutinger say he was going to take N.D. home. He noticed N.D. was so intoxicated that "she wasn't really able to balance properly" and was using Clutinger to support her weight. RP (May 24, 2022) at 380. On the other hand, Clutinger was not visibly intoxicated.

N.D.'s next memory was waking up that evening in a bed, unable to move, and not sure where she was, wearing only her shirt and bra. She recalled that Clutinger was lying next to her, putting his fingers into her vagina. At that point, panic set in because she could not control her body and could not move or speak.

After five minutes of being awake but unable to move, N.D. was able to stand. When she asked for her purse and phone, Clutinger told her that she left her phone at Borracho. N.D. went to the bathroom to collect herself and to try to formulate a plan to leave. She intended to walk back to Borracho but when she learned it was too far, she accepted Clutinger's offer to drive her there. The two made small talk during the drive, and Clutinger dropped her off across the street from Borracho.

N.D. got out of Clutinger's Jeep and started to panic. She saw someone she knew, and ran up to him and started crying. The friend recalled seeing N.D. staring off into space, and when she approached him, she started crying immediately. He then walked N.D. inside Borracho to find her phone. Once there, N.D. told a coworker about what happened. The coworker called 911, and N.D. was taken by ambulance to a local hospital.

At the hospital, medical staff performed a sexual assault examination on N.D. and tested her blood and urine for alcohol and drugs. No substances other than alcohol were found. Law enforcement later obtained a warrant to collect a DNA sample from Clutinger to be compared with the evidence and DNA samples taken from N.D. A forensic scientist with the Washington State Patrol Crime Laboratory found the presence of semen on the vaginal and perineal swabs taken from N.D. but was unable to determine

the DNA profile of the male contributor. However, the forensic scientist found "touch DNA" on N.D.'s underwear, likely transferred by touching or handling the underwear, that matched Clutinger's DNA. RP (May 26, 2022) at 123.

*Pretrial procedure*

The State charged Clutinger with second degree rape. Before trial, defense counsel proposed two jury instructions based on Washington Pattern Jury Instructions: Criminal (WPIC) 4.01a and WPIC 19.03. *See* Clerk's Papers (CP) at 82-83. WPIC 4.01a instructed jurors that Clutinger had pleaded not guilty, that the State had the burden to prove every element of the crime beyond a reasonable doubt, that Clutinger had no burden proving that a reasonable doubt exists as to the crime's elements, that he is presumed innocent, and that a reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. WPIC 19.03 instructed jurors on Clutinger's affirmative defense and his burden of proof:

> It is a defense to a charge of rape in the second degree that at the time of the acts the defendant reasonably believed that [N.D.] was not mentally incapacitated or physically helpless.
> The defendant has the burden of proving this defense by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true. If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty as to this charge.

No. 39101-9-III
*State v. Clutinger*

CP at 99.

    *Trial*

    During opening statements, defense counsel explained to the jury two theories of

the case: (1) the State failed to meet its burden of proof on the elements of second degree

rape, and (2) Clutinger had satisfied his burden to prove the affirmative defense. Defense

counsel concluded opening argument by telling jurors,

> the State will not be able to prove beyond a reasonable doubt that [N.D.]
> was physically helpless or mentally incapacitated on . . . May the 18th,
> 2019. In fact, I expect the evidence and facts to show that David Clutinger
> reasonably believed that [N.D.] was not mentally incapacitated or physically
> helpless.

RP (May 24, 2022) at 289.

    During trial, the State's witnesses testified consistent with the facts above.

    The defense first called N.D.'s boss to testify. He testified he had known

Clutinger for over a decade and employed him occasionally as a maintenance worker. He

recalled seeing Clutinger and N.D. at Fast Eddie's acting "[a]ffectionate" and "flirtatious"

with each other. RP (May 26, 2022) at 132. He did not notice that they were intoxicated

but did notice them drinking more than one drink together. He characterized their

behavior as "out of character for both of them." RP (May 26, 2022) at 140.

6

The defense next called a corporate manager for Tangen Hospitalities. He testified he was with N.D. and Clutinger at Fast Eddie's having a few drinks. He recalled N.D. and Clutinger being flirtatious and seeing N.D. grab Clutinger's shoulder. He described N.D. as not intoxicated and as coherent. He recalled seeing N.D. and Clutinger after they left Fast Eddie's at Sarnac Public House and noticing that N.D. appeared buzzed.

A former owner of Zola also testified for the defense. She recalled Clutinger and N.D. walking into Zola ordering food and water. She testified N.D. and Clutinger did not appear intoxicated and were acting like casual friends.

Clutinger also testified in his defense. He testified he had never met N.D. before the day in question. He described bar hopping with her and the coworker and buying rounds of drinks. He described his time with N.D. at Fast Eddie's as "flirty" and testified she did not appear intoxicated after she rode the Lime scooter. RP (May 26, 2022) at 171. He testified he and N.D. went to Sarnac Public House and Zola after leaving Fast Eddie's. He testified that things got flirtier when the two returned to Borracho, and N.D. eventually asked him for a ride home.

He testified when N.D. got into his Jeep—which had a broken passenger door and required her to climb through the driver side door and over the stick shift—she did not seem overly intoxicated and was able to talk with him. He testified he was going to drive

7

her to her home, but when she asked how close he lived, he drove her to his house. He testified they fell asleep together, fully clothed on his sectional couch, and then moved into his bedroom. He testified N.D. removed her pants, but he remained fully clothed. He described them falling asleep again and then waking up and chatting. He recalled them laying on the bed "snuggling" and "spooning" together, with N.D. moving her butt against his crotch. RP (May 26, 2022) at 183, 185. He eventually rubbed N.D. outside and inside of her underwear, then put his fingers in her vagina. He testified that he, at no point, believed N.D. was mentally incapacitated or physically helpless. He believed their interactions were mutual.

*Jury instruction conference*

After the parties presented their cases, the court held a jury instruction conference. The prosecutor discussed the two jury instructions proposed by defense counsel, including the affirmative defense instruction:

> So Number 10, Your Honor, is based on WPIC 19.03, and the notes to that indicate that Mr. Clutinger is entitled to this instruction if any evidence presented at trial supports the defense regardless of the party that presented it, and I think that that standard has been met by the testimony of Mr. Clutinger, as well as maybe other testimony. So [defense counsel's] proposed language fits with the WPIC. That's why I have no objection to Number 10.
>
> [Defense counsel] did propose a reasonable doubt instruction, but it appears to be the same as the one I proposed.

8

RP (May 26, 2022) at 206.  The court adopted the two instructions proposed by defense

counsel.

*Closing arguments and verdict*

During closing arguments, defense counsel first told jurors the State "didn't prove

a second degree rape beyond a reasonable doubt."  RP (May 31, 2022) at 234.  Defense

counsel continued, "I found many reasonable doubts in David Clutinger's case, and I'm

going to go through some of them I found. . . .  You might find other reasonable doubts

that I don't even bring up."  RP (May 31, 2022) at 236.  Defense counsel argued that

various contradictory witness statements and facts provided reasonable doubt.

Defense counsel also discussed the affirmative defense instruction, jury instruction

10, and its different burden of proof:

> Instruction Number 10, it's a defense to the charge of rape in the second degree that at the time of the acts, the defendant reasonably believed that [N.D.] was not mentally incapacitated or physically helpless.
> The defendant has the burden of proving this defense by the preponderance of the evidence.  Preponderance of the evidence means you must be persuaded considering all of the evidence in this case that is probably more true than not true.
> If you find the defendant has established this defense, it's your duty to return a verdict of not guilty.  David Clutinger testified that she was able to consent, that she participated in this.  I think this has been proven easily.
> I don't want to confuse this, though, with the burden shifting because the State must prove the second degree rape beyond a reasonable doubt, but you can look at this instruction, as well.

9

RP (May 31, 2022) at 251-52.  Defense counsel then reviewed Clutinger's version of events, including that N.D. had no problems getting into his Jeep through the window and that she spoke with him coherently during their encounter.

Defense counsel concluded,

> [N.D.] was never physically helpless or mentally incapacitated.  The government has the entire burden of proof, and they did not prove it beyond a reasonable doubt.
> I'm going to ask you to return the only fair and just verdict in this case, to find David Clutinger not guilty of second degree rape.

RP (May 31, 2022) at 253-54.  The jury nevertheless found Clutinger guilty, and he timely appealed to this court.

## ANALYSIS

Clutinger argues his trial counsel was ineffective for requesting the affirmative defense instruction.  We disagree.

We review a claim of ineffective assistance of counsel de novo.  *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).  Criminal defendants have a constitutionally guaranteed right to effective assistance of counsel.  U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). Washington follows the *Strickland*[1] standard for reversal of criminal convictions based on

---

[1] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

ineffective assistance of counsel. *See Sutherby*, 165 Wn.2d at 883. In *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011), the court described the two-pronged inquiry:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment [to the United States Constitution]. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."

(alteration in original) (quoting *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (in turn, quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984))). If either prong is not satisfied, the inquiry ends. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

With regard to the first prong, a defendant must overcome a strong presumption that counsel's performance was reasonable and, when counsel's conduct can be characterized as a legitimate trial strategy, performance will not be deemed deficient. *State v. Breitung*, 173 Wn.2d 393, 398, 267 P.3d 1012 (2011). To rebut this presumption, the defendant bears the burden of establishing the absence of any conceivable legitimate tactic explaining counsel's performance. *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Proposing a detrimental

11

instruction, even when it is a WPIC, may constitute ineffective assistance. *State v.*

*Brown*, 21 Wn. App. 2d 541, 562, 506 P.3d 1258, *review denied*, 199 Wn.2d 1029,

514 P.3d 641 (2022).

Here, the State charged Clutinger with second degree rape under RCW

9A.44.050(1)(b), which provides: "A person is guilty of rape in the second degree when,

under circumstances not constituting rape in the first degree, the person engages in sexual

intercourse with another person . . . [w]hen the victim is incapable of consent by reason of

being physically helpless or mentally incapacitated."

Clutinger argues his trial counsel was deficient for requesting an affirmative

defense instruction that was unnecessary to his defense against the second degree rape

charge. He argues the affirmative defense instruction was inapplicable to the case

because the singular defense theory was that the State failed to prove the elements of the

charge beyond a reasonable doubt. We are not persuaded by these arguments.

Contrary to Clutinger's assertion, his trial counsel made clear in opening

statements and closing arguments that the defense was pursuing two theories of the case.

First, the State had not proved all of the elements of second degree rape beyond a

reasonable doubt; specifically, the element of the victim being incapable to consent by

reason of being physically helpless or mentally incapacitated. Second, the evidence

12

proved the affirmative defense that Clutinger reasonably believed N.D. was not mentally incapacitated or physically helpless.

The two separate theories were also supported by testimony elicited from the defense's witnesses. Supportive of the first theory, N.D.'s boss testified he did not notice N.D.'s intoxication, only that she and Clutinger had more than one drink. The corporate manager testified N.D. and Clutinger both appeared only "buzzed." RP (May 26, 2022) at 152. And the former owner of Zola testified N.D. did not appear intoxicated.

Clutinger's testimony supported both defense theories. He testified N.D. did not seem intoxicated and was able to talk with him coherently and climbed into his Jeep through the window. He testified N.D. never was mentally incapacitated or physically helpless, and their interactions were mutual. Accordingly, defense counsel's request for the affirmative defense instruction permitted him to argue both defense theories.

Clutinger also argues his trial counsel did not understand the distinction between the State's burden of proving incapacitation beyond a reasonable doubt and his burden of proving his affirmative defense by a preponderance of the evidence. Again, we are not persuaded by his argument. Both in his opening statement and closing argument, defense counsel correctly explained the differing burdens each side had with respect to proving second degree rape and Clutinger's affirmative defense.

13

Lastly, Clutinger takes issue with his trial counsel's argument in closing: "If you find the defendant has established this defense, it's your duty to return a verdict of not guilty. David Clutinger testified that *she was able to consent*, that she participated in this." RP (May 31, 2022) at 252 (emphasis added). Clutinger argues, "[d]efense counsel mixed together proof beyond a reasonable doubt and a defense that must be proven beyond a preponderance in a legally inaccurate and confusing way." Br. of Appellant at 24-25. We disagree.

Counsel had just finished clearly explaining the affirmative defense and its burden of proof. The quoted argument related to the affirmative defense. In context, defense counsel's argument was—not only did Clutinger believe N.D. was able to consent—she in fact was able to consent *and* she participated. Such an argument was not confusing nor was it deficient. We conclude that defense counsel's performance was not deficient and reject Mr. Clutinger's ineffective assistance of counsel claim.

No. 39101-9-III
*State v. Clutinger*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_Lawrence-Berrey_, A.C.J.
Lawrence-Berrey, A.C.J.

WE CONCUR:

_Pennell, J._
Pennell, J.

_Staab, J._
Staab, J.